United States v. Brunner

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

_____

August Term, 2011

(Argued: June 21, 2012                    Decided: August 9, 2013)

Docket No. 11-2115

_____

UNITED STATES OF AMERICA,


*Appellee,*


v.

KENNETH BRUNNER,

*Defendant-Appellant.*[1]


_____


Before: POOLER, RAGGI, and LYNCH, *Circuit Judges*.

Appeal from the judgment of the United States District Court for the Northern District of New York (Glenn T. Suddaby, *J.*) filed May 11, 2011 sentencing defendant Kenneth Brunner principally to six months' imprisonment pursuant to 18 U.S.C. § 2250(a) for knowingly failing to register and update his sex offender registration as required by the Sex Offender Registration and Notification Act, ("SORNA"). On appeal,

---

[1] The Clerk of the Court is directed to amend the caption as above.

Brunner challenges Congress's authority to require him to register when he was no longer in the military and was no longer under federal supervision. As the Supreme Court's decision in *United States v. Kebodeaux*, 133 S. Ct. 2496 (2013) made clear, Congress possessed the requisite authority through the Military and Necessary and Proper Clauses to hold Brunner to SORNA's registration requirements, thus we affirm the judgment of the district court.

Affirmed.

_____

> JAMES P. EGAN, (Lisa Peebles, Federal Public Defender, *on the brief*) Syracuse, NY, *for Defendant-Appellant Kenneth Brunner*.
>
> BRENDA K. SANNES, Assistant United States Attorney, (Richard Hartunian, United States Attorney, Lisa M. Fletcher, Assistant United States Attorney, *on the brief*) Syracuse, NY, *for Appellee*.

POOLER, *Circuit Judge*:

Kenneth Brunner, a federal sex offender, appeals from his conviction in the United States District Court for the Northern District of New York (Glenn T. Suddaby, *J.*) for knowingly failing to register and update his sex offender registration pursuant to the Sex Offender Registration and Notification Act, ("SORNA"). As Brunner's principal argument that Congress lacked authority to impose SORNA's registration requirements on him is now foreclosed by the Supreme Court's decision in *United States v. Kebodeaux*, 133 S.Ct. 2496 (2013), we affirm.

2

## BACKGROUND

In June 2002, Brunner was found guilty by a general court-martial of carnal knowledge and sodomy of a child under 16, in violation of Articles 120 and 125 of the Uniform Code of Military Justice. Brunner was sentenced to 24 months' confinement, with 12 months suspended, and dishonorably discharged. New York State designated Brunner a level 2 sex offender, which required him to register as a sex offender in New York and to keep his registration current. New York state law classifies a level 2 sex offender as one whose risk of repeat offense is moderate. NY Correction Law § 168-k(2).

When released from custody on June 3, 2003, Brunner completed a sex offender registration form, listing his expected residence as Barneveld, New York. On that same form, Brunner acknowledged his duty to notify the New York Department of Criminal Justice Services ("DCJS") in writing of any change of home address no later than ten days after such a move. In August 2003, Brunner filed a change of address form listing his new residence in Rome, New York. DCJS sent Brunner the mandatory annual verification forms at his last-known address in Rome from 2007, 2008, and 2009, but the forms were returned by the post office as undeliverable. On March 9, 2009, the Rome City Court issued a warrant for Brunner, charging him with failure to register. On March 26, 2010, the Rome Police Department asked the U.S. Marshals Service for help finding Brunner. An investigation revealed that Brunner had applied for food stamps and

3

Medicaid under a false name, Christopher Wiatr, listing an address in Utica, New York. The Marshals located Brunner at the address purportedly belonging to Wiatr, and on April 15, 2010, a federal grand jury for the Northern District of New York indicted Brunner for failing to register as required by SORNA.

Brunner moved to dismiss the indictment in district court. His principal argument was that SORNA was unconstitutional as applied to him because before SORNA was enacted in 2006, Brunner had already served his full sentence, left the military and severed any connection to the federal government. The district court denied the motion, finding that (1) as a federally convicted sex offender, Brunner lacked standing to raise a Commerce Clause challenge; and (2) Section 2250(a)(2)(A)'s registration requirements are "valid based on the federal government's 'direct supervisory interest' over federal sex offenders.'" Dist. Ct. Op. at 7 (quoting *United States v. George*, 625 F.3d 1124, 1130 (9th Cir. 2010)).

Brunner then entered a conditional guilty plea to the sole count of the indictment, but  preserved his right to appeal the constitutionality of SORNA as applied to him. Our Court heard oral argument on June 21, 2012. After argument was heard, the Supreme Court granted a petition for certiorari brought by the government in *United States v. Kebodeaux*, 687 F.3d 232 (5th Cir. 2012). The facts of *Kebodeaux* closely mirror the facts of this case: the defendant, required to register as a sex offender after being convicted under the UCMJ of having sex with a minor, was convicted of knowingly

failing to update his sex offender registration as required by SORNA following an in-state change of residence. *Id.* at 234. On rehearing en banc, a divided Fifth Circuit held that SORNA was unconstitutional because Congress lacked the authority to continue to exercise authority over Kebodeaux after he served his sentence and ended his military service. *Id.* The en banc court concluded that:

> The statute's regulation of an individual, after he has served his sentence and is no longer subject to federal custody or supervision, solely because he once committed a federal crime, (1) is novel and unprecedented despite over 200 years of federal criminal law, (2) is not "reasonably adapted" to the government's custodial interest in its prisoners or its interest in punishing federal criminals, (3) is unprotective of states' sovereign interest over what intrastate conduct to criminalize within their own borders, and (4) is sweeping in the scope of its reasoning.

*Id.* at 245. The Fifth Circuit found that Kebodeaux was "unconditionally" free after fully serving his sentence, even though pre-SORNA federal law also required certain federal sex offenders to register. *Id.* at 235 n.4. *See* Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act, 42 U.S.C. § 14071. The Fifth Circuit concluded that after "the federal government has *unconditionally* let a person free . . . the fact that he once committed a crime is not a jurisdictional basis for subsequent regulation and possible criminal prosecution." *Kebodeaux*, 687 F.3d at 234-35.

The government filed a petition for certiorari, which the Supreme Court granted on January 11, 2013. *United States v. Kebodeaux*, 133 S. Ct. 928 (U.S. Jan. 11, 2013). The Supreme Court reversed the Fifth Circuit on June 24, 2103. *United States v. Kebodeaux*,

5

133 S. Ct. 2496 (2013). The Court held that Congress, through the Military Regulation and the Necessary and Proper Clauses, possessed the authority to compel even federal offenders who had completed their sentences and severed their connection to the military to register as required by SORNA. The Supreme Court held that Kebodeaux's release was not "unconditional" because at all times relevant, Kebodeaux was subject to the Wetterling Act. *Id.* at 2501. The Supreme Court held that the Wetterling Act "imposed . . . registration requirements very similar to those that SORNA later imposed," such that Kebodeaux was never truly outside the scope of government authority. *Id.* at 2502. Thus, the Supreme Court concluded that, as applied to defendants "already subject to the Wetterling Act," SORNA "[fell] within the scope [of] Congress' authority under the Military Regulation and Necessary and Proper Clauses." *Id*.

Following the Supreme Court's decision, the parties submitted supplemental briefing to our Court. We have reviewed the briefing, and we find no need for further oral argument.

## DISCUSSION

We review Brunner's constitutional challenge to Section 2250(a) de novo. *United States v. Hester*, 589 F.3d 86, 90 (2d Cir. 2009). "Due respect for the decisions of a coordinate branch of Government demands that we invalidate a congressional enactment only upon a plain showing that Congress has exceeded its constitutional bounds." *United States v. Morrison*, 529 U.S. 598, 607 (2000).

As described in detail in *Kebodeaux*, SORNA's predecessor legislation was the Wetterling Act, passed by Congress in 1994. Like SORNA, the Wetterling Act used the federal purse as a means of compelling the states to adopt sex offender registration laws. 42 U.S.C. § 14071(i) (2000 ed.). The Wetterling Act required individuals who committed federal sex crimes to register as sex offenders in the states in which the indviduals lived, § 14071(b)(7)(A), and imposed federal penalties on those who failed to register, as well as on those who failed to keep their registrations current and accurate. *Id.* § 14072(i)(3)–(4). The registration requirements set forth in the Wetterling Act extended to those convicted and "sentenced by a court martial for conduct in a category specified by the Secretary of Defense under section 115(a)(8)(C) of title I of Public Law 105–119." § 14072(i)(4).

Congress enacted SORNA in 2006 as part of the Adam Walsh Child Protection and Safety Act, Pub. L. 109-248, Tit. I., 120 Stat. 587 (2006), in an effort to make state sex-offender registration and notification schemes "more comprehensive, uniform, and effective." *Carr v. United States*, 560 U.S. 438, ——, 130 S. Ct. 2229, 2232 (2010). SORNA requires in relevant part that sex offenders "shall register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student." 42 U.S.C. § 16913(a). SORNA "appl[ies] to all sex offenders, including sex offenders convicted of the offense for which registration is required prior to the enactment of [SORNA]." 28 C.F.R. § 72.3 (2012).

7

Under SORNA's criminal enforcement provision, anyone who (1) is required to register under SORNA; (2) is a sex offender as defined by SORNA as a result of a federal conviction or travels in interstate commerce; and (3) knowingly fails to register, or to update a registration; is subject to a fine or up to ten years' imprisonment, or both. 18 U.S.C. § 2250 (a)(2)(A).

In his post-*Kebodeaux* briefing to this Court, Brunner concedes that "as applied to him, SORNA falls within the scope of Congress's authority under the Military Regulation and Necessary and Proper Clauses." We agree. *Kebodeaux* allows us to draw but one conclusion: that as Brunner was subject to the Wetterling Act at the time of his 2002 court-martial conviction, Congress plainly had the authority under the Military Regulation and Necessary and Proper Clauses to hold Brunner to SORNA's registration requirements.

Brunner presses two additional arguments to avoid application of *Kebodeaux* to his case. First, he urges us to find that the government waived the Wetterling Act argument by failing to raise it during the proceedings before the district court, or indeed in this Court until after oral argument. Brunner is correct that as a "general rule . . . an appellate court will not consider an issue raised for the first time on appeal." *Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 114 (2d Cir. 2005) (quotation marks omitted). The government concedes that it did not reference the Wetterling Act explicitly, but argues that it was indirectly implicated in the government's argument that SORNA was valid as applied to

8

Brunner "based upon the federal government's 'direct supervisory interest' over federal sex offenders." Even assuming that the government failed to raise the argument below, the rule against considering arguments raised for the first time on appeal "is prudential, not jurisdictional," and we are free to exercise our "discretion to consider waived arguments." *Sniado v. Bank Austria AG*, 378 F.3d 210, 213 (2d Cir. 2004). Exercise of that discretion is particularly appropriate where an argument presents a question of law and does not require additional fact finding. *Id.* As the issue of the Wetterling Act presents a question of law, and requires no additional fact finding. Brunner asks us to find that Congress exceeded its constitutional power by subjecting him to SORNA at a time when he was no longer subject to federal supervision. However, as the Supreme Court recognizes—and as Brunner himself concedes—at all time following his military conviction he was subject to the requirements of the Wetterling Act. Under these circumstances, it would not promote the interests of justice to vacate Brunner's unquestionably valid conviction because the government failed to refer to the Wetterling Act in the district court or its brief to this Court. We therefore exercise our discretion to consider the issue here, and find Brunner bound by *Kebodeaux.*

Second, Brunner argues that applying SORNA to him violates the Ex Post Facto Clause. However, that argument is foreclosed by our Court's decision in *United States v. Guzman*, 591 F.3d 83 (2d Cir. 2010). There, we held that where defendants "were convicted of traveling interstate and failing to register," and "the travel and failure to

9

register occurred after SORNA's enactment and the effective date of the regulations indicating that SORNA applies to all sex offenders," then "[t]here is, therefore, no ex post facto problem with their convictions." *Id.* at 94. Here, Brunner pleaded guilty to failing to register in violation of SORNA from June 2007 through April 2010. SORNA was enacted in 2006. The Attorney General published an Interim Rule extending SORNA requirements "to all sex offenders, including sex offenders convicted of the offense for which registration is required prior to enactment of that Act," on February 28, 2007. Invoking the "good cause" exception to the Administrative Procedure Act, the Attorney General declared the Interim Rule effective immediately, and further stated that the Interim Rule makes it "indisputably clear that SORNA applies to all sex offenders (as the Act defines that term) regardless of when they were convicted." Office of Attorney General; Applicability of Sex Offender Registration and Notification Act, 72 Fed. Reg. 8894, 8896 (Feb. 28, 2007) (codified at 28 C.F.R. pt. 72). As the indictment charges Brunner with failing to comply with SORNA after its "enactment and the effective date of the regulations indicating that SORNA applies to all sex offenders," *Guzman*, 591 F.3d at 94, the indictment does not violate the Ex Post Facto Clause.

## CONCLUSION

For the reasons given above, the judgment of the district court is affirmed.

10