FILED
United States Court of Appeals
Tenth Circuit

September 19, 2014

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

v.

GUSTAVE WILHELM BRUNE,

        Defendant - Appellant.

No. 12-3322

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D.C. NO. 2:11-CR-20128-CM-1)**

---

Tim Burdick, Assistant Federal Public Defender (Cyd Gilman, Federal Public Defender with him on the briefs), Office of the Federal Public Defender for the District of Kansas, Kansas City, Kansas, for Appellant.

James A. Brown, Assistant United States Attorney (Barry R. Grissom, United States Attorney, with him on the brief) Office of the United States Attorney, District of Kansas, Topeka, Kansas, for Appellee.

---

Before **TYMKOVICH**, **BALDOCK**, and **PHILLIPS**, Circuit Judges.

---

**TYMKOVICH**, Circuit Judge.

---

Gustave Brune repeatedly failed to update his sex offender status as required by Kansas and federal law. When he was arrested for these oversights, things got worse because the arresting agents found images of child pornography on Brune's computer. He was eventually indicted in federal court for failure to update the sex offender registry and possession of child pornography, and convicted on both charges.

Brune makes two separate constitutional challenges to his convictions. First, he asks us to find unconstitutional a subsection of the Sex Offender Registration and Notification Act (SORNA), 42 U.S.C. § 16913, which requires federally convicted sex offenders, among others, to register their status in states where they live, work, or study. Under SORNA, it is a criminal offense for any sex offender subject to the act's requirements to fail to register or keep the registration current. Brune argues that § 16913 exceeds Congress's authority under the Necessary and Proper Clause of Article I. Based on recent Supreme Court precedent, *United States v. Kebodeaux*, 133 S. Ct. 2496 (2013), we disagree.

Second, Brune brings a facial challenge to 18 U.S.C. § 2252A(a)(5)(B), a statute that criminalizes possessing, or accessing with the intent to view, materials containing images of child pornography. Brune contends that the statute is unconstitutionally overbroad because it proscribes significant amounts of speech and conduct protected by the First Amendment. Because Brune fails to establish

-2-

the substantial overbreadth needed to prevail on his facial challenge, we find the statute facially constitutional.

Exercising jurisdiction under 28 U.S.C. § 1291, we AFFIRM the district court's decision to deny both of Brune's motions to dismiss his indictment.

## I. Background

Brune pleaded guilty in 2001 to a violation of 18 U.S.C. § 2252(a)(4)(B), which prohibits the possession of child pornography. He served twenty-seven months in federal prison and, upon completing his sentence, he was placed on supervised release.

In the late summer of 2004, Brune's contingent federal supervision was revoked because he violated a condition of his release. The violation subjected Brune to an additional twenty-one months in jail. In 2006, Brune completed his supplemental sentence and was released without federal supervision.

Although he secured the privilege of unsupervised release, Brune's freedom was not unconditional. As a result of his federal conviction under § 2252(a)(4)(B), Brune was required to register as a sex offender for life under the Kansas Offender Registration Act (KORA), K.S.A. 22-4901 *et seq.* KORA was enacted in 1994 as a result of Kansas's intent to comply with the federal Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act (the Wetterling Act), Pub. L. No. 103-322, §§ 170101–170303, 108 Stat. 1796, 2038–45 (1994), which in part required states to enact mandatory

registration systems for sex offenders as a prerequisite for the receipt of certain federal funding. To fortify the safeguards underlying the Wetterling Act, Congress enacted SORNA in 2006, which required offenders such as Brune to register their status as a sex offender and keep that registration current. 42 U.S.C. § 16913(a). Failure to do so is a federal offense. 18 U.S.C. § 2250(a).

Between his 2006 release and 2011, Brune habitually failed to comply with his registration requirements. As relevant to this case, Brune does not dispute that he failed to register between August 2009 and early May 2011. His dereliction of the registration requirement for over twenty months violated SORNA's yearly registration requirements, not to mention the more stringent obligations under KORA.

After an investigation, federal officials charged Brune with a failure to register as a sex offender and issued an accompanying arrest warrant. During a search of his home incident to the arrest, government agents discovered images of child pornography on Brune's home computer. The government seized the computer and confirmed that Brune had accessed a webpage containing child pornography.

He was subsequently indicted for (1) failing to register under SORNA, 18 U.S.C. § 2250; and (2) unlawfully, knowingly, and intentionally accessing with the intent to view child pornography under 18 U.S.C. § 2252A(a)(5)(B). He unsuccessfully lodged constitutional challenges to the indictment in district court,

and eventually pleaded guilty to the charges, reserving the right to bring this appeal.

## II. Discussion

Brune contends the two statutes underlying his indictment offend the Constitution. First, he argues the Necessary and Proper Clause cannot sustain Congress's decision to enact SORNA's registration provisions. Second, he asserts the conduct prohibited by § 2252A(a)(5)(A) is unconstitutionally overbroad. For the reasons articulated below, we find both of Brune's contentions unpersuasive.

### A. Constitutionality of SORNA

Brune contends his indictment should have been dismissed because Congress exceeded its constitutional powers in enacting SORNA. In particular, he argues Congress overstepped its enumerated powers because SORNA is untethered to the Necessary and Proper Clause of Article I of the Constitution, which "grants Congress the power to 'make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers' and 'all other Powers' that the Constitution vests 'in the Government of the United States, or in any Department or Officer thereof.'" *United States v. Kebodeaux*, 133 S. Ct. 2496, 2502 (2013) (quoting U.S. Const., art. I, § 8, cl. 18).

We review de novo the district court's denial of a motion to dismiss an indictment on constitutional grounds. *United States v. Carel*, 668 F.3d 1211,

1216 (10th Cir. 2011). As a part of our de novo review, however, we must "presume that the statute is constitutional." *See id.* (citing *United States v. Plotts*, 347 F.3d 873, 877 (10th Cir. 2003)). That deference requires "a plain showing that Congress has exceeded its constitutional bounds." *United States v. Morrison*, 529 U.S. 598, 607 (2000).

Brune's constitutional argument is at odds with the Supreme Court's recent decision in *Kebodeaux*. In that case, the Court rejected an as-applied challenge by a serviceman to SORNA's registration requirements. Kebodeaux was convicted by court-martial for having sex with a minor while on active duty in the United States Air Force. After serving his sentence, he was required to register as a sex offender under the Wetterling Act, but was not put on supervised release. When Kebodeaux failed to properly update his registration status, he was prosecuted under SORNA.

Kebodeaux argued that the Constitution did not allow the federal government to regulate federally convicted sex offenders' intrastate activities through registration requirements. *Kebodeaux*, 133 S. Ct. at 2500. The Supreme Court, however, found the statute was consistent with Congress's power under the Constitution's Necessary and Proper Clause. The Court held that, when affixed to Congress's power under the Military Regulation Clause, the scope of the Necessary and Proper Clause permitted Congress to enact SORNA's registration requirements. *Id.* at 2505. It did not matter that the sex offender was not on

supervised release or otherwise free from *direct* supervision of the government. *Id.* By virtue of the ongoing federal registration requirements under the Wetterling Act, the Court explained, the government maintained a special relationship with Kebodeaux in perpetuity. *Id.* at 2504–05.

Brune is in a similar place to Kebodeaux. As part of his punishment for a violation of a validly enacted federal law, Brune was subject to civil registration requirements imposed on sex offenders. In fact, Brune, like Kebodeaux, has been subject to federal registration requirements—first under the Wetterling Act and then under SORNA[1]—since his 2001 federal conviction. Due to this government supervision, indirect as it may be, Brune was never unconditionally released from federal oversight.

As the Court did in *Kebodeaux*, we apply the principles underpinning the Necessary and Proper Clause to determine SORNA's constitutionality as applied to Brune. Specifically, we ask "whether the statute constitutes a means that is rationally related to the implementation of a constitutionally enumerated power." *United States v. Comstock*, 560 U.S. 126, 134 (2010); *see also McCulloch v. Maryland*, 4 Wheat. 316, 405, 4 L. Ed. 579 (1819).

---

[1] We recognize the Supreme Court's conclusion that SORNA's extension of the Wetterling Act does not pose constitutional problems. *Kebodeaux*, 133 S. Ct. at 2504–05.

-7-

To answer this question, we apply a well-established two-part test. *See Comstock*, 560 U.S. at 133–36. *First*, the statute of conviction must be a valid exercise of one of Congress's enumerated powers. Thus, in *Kebodeaux*, the Supreme Court found that Congress's power to regulate the military under the Constitution included the authority to impose criminal penalties for sex crimes committed during military service. *Kebodeaux*, 133 S. Ct. at 2503.

*Second*, if the statute of conviction is constitutional, then the incidental statute or regulation must be necessary and proper for carrying into execution the enumerated power underlying the statute of conviction. An incidental requirement that simply imposes an additional obligation resulting from the violation of federal law fits within this framework. *Id.* at 2504. In *Kebodeaux*, the registration requirements under SORNA and the Wetterling Act were an "eminently reasonable" exercise of Congress's power under the Necessary and Proper Clause. *Id.* Based on this analysis, the Supreme Court confirmed SORNA's constitutionality as it applied to Kebodeaux.

But the decision in *Kebodeaux* was far from unanimous and it drew two dissenting opinions and two concurrences that bear on our analysis. The principal dissent by Justice Thomas criticized SORNA itself as an unconstitutional means that does not further—that is, "carry into execution"—any of Congress's enumerated powers. *Id.* at 2512 (Thomas, J., dissenting). In other words, because SORNA's registration requirements were not directed at implementing the

-8-

Military Regulation Clause (or any other Article I power), the dissent explained, the Necessary and Proper Clause could not protect SORNA from Kebodeaux's as-applied constitutional attack. *Id.* at 2514. Without proper tethering to a constitutional power, the dissent reasoned that SORNA partially (and impermissibly) usurped the general police power that the Constitution expressly reserved to the states. *Id.* at 2513.

To a lesser degree, the concurring opinions by Chief Justice Roberts and Justice Alito shared this concern about expanding the scope of Article I power through registration requirements, like those under SORNA, that resemble some sort of "federal police power over prior federal offenders." *See id.* at 2508 (Roberts, C.J., concurring in the judgment). Notwithstanding this criticism, the concurring opinions both found SORNA constitutional as a necessary and proper exercise of Congress's power "[t]o make Rules for the Government and Regulation of the land and naval Forces." *See id.* at 2508 (Alito, J., concurring in the judgment) (quoting U.S. Const., art. I, § 8, cl. 14); *see also id.* at 2506 (Roberts, C.J., concurring in the judgment). In short, the concurrences found substance in the fact that the criminal statute under which the government prosecuted Kebodeaux was enacted pursuant to the Military Regulation Clause and sought to limit the scope of the holding to cases arising under, more or less, identical factual circumstances. But for our purposes, the majority opinion binds us, and its analysis does not confine SORNA's constitutionality to applications

involving only the Military Regulation Clause.  *See id.* at 2503 (majority opinion).  Nothing in the majority opinion isolates the Military Regulation Clause as the sole foundation for congressional authority in support of SORNA.

Thus, while respectful of the well-reasoned alternative analysis urged by the dissent and concurrences, we are convinced that *Kebodeaux* requires us to reject Brune's constitutional challenge to SORNA even though his statute of conviction was enacted pursuant to the Commerce Clause.

Guided by the *Kebodeaux* majority's application of the Necessary and Proper Clause's two-part test described above, we conclude that SORNA survives Brune's as-applied challenge.  Like the statute that punished military sex offenders in *Kebodeaux*, Brune's original statute of conviction, 18 U.S.C. § 2252(a)(4)(B), plainly withstands constitutional scrutiny as an exercise of congressional authority under the Commerce Clause to regulate the interstate trafficking of child pornography.  *Plotts*, 347 F.3d at 879 ("[T]he Commerce Clause empowers Congress to criminalize the receipt of child pornography over the Internet."); *see also United States v. Wollet*, 164 F. App'x 672, 676 (10th Cir. 2006) (same); *United States v. Riccardi*, 405 F.3d 852, 866–67 (10th Cir. 2005) (same).  And because the constitutionality of the underlying statute cannot be reasonably questioned, SORNA's registration requirements are a limited and rational extension of congressional power, as permitted by the Necessary and Proper Clause.

Simply put, *Kebodeaux* directs our conclusion that SORNA is constitutional as applied to Brune, a federal sex offender who was never unconditionally released from federal supervision.[2]

## B. Constitutionality of 18 U.S.C. § 2252A(a)(5)(B)

Brune next contends that § 2252A(a)(5)(B)'s unconstitutional overbreadth is evident on the statute's face because, despite its aim to reach only child pornography, it unintentionally restricts an individual from accessing sizable amounts of protected speech.[3] We review Brune's challenge de novo, *Carel*, 668 F.3d at 1216, and we "perform an independent examination of the record to ensure protection of free speech rights." *Hawkins v. City & County of Denver*, 170 F.3d 1281, 1285 (10th Cir. 1999).

Before turning to the text of the statute, we review applicable First Amendment and overbreadth principles.

---

[2] In reaching this conclusion, we join the collection of federal appellate courts that have uniformly found that, post-*Kebodeaux*, SORNA's registration requirements cannot be constitutionally challenged under the Necessary and Proper Clause. *United States v. Reyes*, 550 F. App'x 201 (5th Cir. 2013); *United States v. Elk Shoulder*, 738 F.3d 948 (9th Cir. 2013); *United States v. Brunner*, 726 F.3d 299 (2d Cir. 2013). We previously upheld § 16913 under the Necessary and Proper Clause when applied to a sex offender on supervised release. *See Carel*, 668 F.3d at 1222.

[3] Because this is a facial overbreadth challenge, we find it irrelevant to consider certain issues with the completeness of Brune's own indictment.

### *1. The First Amendment*

It is well established that Congress has broad authority to criminalize the creation and dissemination of child pornography. Although the First Amendment prohibits Congress from making any law "abridging the freedom of speech," U.S. Const. amend. I, that freedom "does not embrace certain categories of speech, including defamation, incitement, obscenity, and pornography produced with real children." *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 245–46 (2002). The Supreme Court has upheld laws that criminalize the production and distribution of child pornography. *See, e.g.*, *New York v. Ferber*, 458 U.S. 747 (1982); *Osborne v. Ohio*, 495 U.S. 103 (1990).

But the fact that a statute is designed to suppress child pornography does not necessarily insulate it from an overbreadth challenge where the "law punishes a 'substantial' amount of protected free speech, 'judged in relation to the statute's plainly legitimate sweep.'" *Virginia v. Hicks*, 539 U.S. 113, 118–19 (2003) (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973)). An imprecise law that criminalizes access to Nabokov's *Lolita* or Woody Allen's *Manhattan* will not survive constitutional scrutiny even if it also bans access to actual hardcore images of underage victims. In other words, the test for overbreadth does not display extra teeth whenever the statute addresses an area that has long been

proscribed.[4]  Nonetheless, a "universal and long-established tradition of prohibiting certain conduct creates a strong presumption that the prohibition is constitutional."  *Nevada Comm'n on Ethics v. Carrigan*, 131 S. Ct. 2343, 2347–48 (2011) (quoting *Republican Party of Minn. v. White*, 536 U.S. 765, 785 (2002)).

## 2.  *Facial Overbreadth*[5]

To succeed in an overbreadth challenge, thereby invalidating *all* enforcement of the law, a challenger "must show that the potential chilling effect on protected expression is 'both real and substantial.'"  *Jordan v. Pugh*, 425 F.3d 820, 828 (10th Cir. 2005) (quoting *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 216 (1975)).  Finding *some* overbreadth only satisfies part of the inquiry, as the challenger must also show that the "law punishes a 'substantial' amount of protected free speech, 'judged in relation to the statute's plainly legitimate sweep.'"  *Hicks*, 539 U.S. at 118–19 (quoting *Broadrick*, 413 U.S. at 615).

The Supreme Court has "vigorously enforced the requirement that a statute's overbreadth be *substantial*" in both absolute and relative terms.  *United*

---

[4]  In *Ashcroft*, for example, the Supreme Court held that a statute ran afoul of the First Amendment due to overbreadth even though it furthered a goal of criminalizing child pornography.  *Ashcroft*, 535 U.S. at 251–53.

[5]  Brune has standing to facially challenge § 2252A(a)(5)(B)'s constitutionality because the First Amendment overbreadth doctrine provides "an exception to the general rule that a person to whom a statute may be constitutionally applied cannot challenge the statute on the grounds that it may be unconstitutionally applied to others."  *Massachusetts v. Oakes*, 491 U.S. 576, 581 (1989).

*States v. Williams*, 553 U.S. 285, 292 (2008) (emphasis in original).  Thus, even where a fair amount of constitutional speech is implicated, we will not invalidate the statute unless significant imbalance exists:

> [T]here comes a point at which the chilling effect of an overbroad law, significant though it may be, cannot justify prohibiting all enforcement of that law—particularly a law that reflects "legitimate . . . interests in maintaining comprehensive controls over harmful constitutionally unprotected conduct."  For there are substantial social costs *created* by the overbreadth doctrine when it blocks application of a law to constitutionally unprotected speech, or especially constitutionally unprotected conduct.

*Hicks*, 539 U.S. at 119 (citation omitted) (quoting *Broadrick*, 413 U.S. at 615); *see also Williams*, 553 U.S. at 292 ("[I]nvalidating a law that in some of its applications is perfectly constitutional—particularly a law directed at conduct so antisocial that it has been made criminal—has obvious harmful effects.").

Facial challenges, moreover, including those based on overbreadth, "are disfavored for several reasons."  *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 (2008).  At a fundamental level, facial challenges counteract principles of both judicial restraint and separation of powers.  With respect to judicial restraint, facial challenges permit judges to issue "premature interpretation of statutes on the basis of factually barebones records," *Sabri v. United States*, 541 U.S. 600, 609 (2004) (alteration incorporated) (internal quotation marks and citation omitted), and breach the fundamental principal "that

courts should neither anticipate a question of constitutional law in advance of the necessity of deciding it nor formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied," *Wash. State Grange*, 552 U.S. at 450 (quotations omitted). And regarding the separation of powers, facial challenges empower a court "to nullify more of a legislature's work than is necessary," which disrupts the intent of the people's democratically elected officials. *Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 329 (2006).

Conscious of these risks, the "[a]pplication of the overbreadth doctrine . . . is, manifestly, strong medicine" and it "has been employed . . . sparingly and only as a last resort." *Broadrick*, 413 U.S. at 613. The bottom line is that successful "facial challenges are best when infrequent." *Sabri*, 541 U.S. at 608.

### 3. Brune's Challenge

With these principles in mind, the first step in analyzing an overbreadth challenge is to "construe the challenged statute; it is impossible to determine whether a statute reaches too far without first knowing what the statute covers." *Williams*, 553 U.S. at 293. And even if the statute does reach some "protected expression, facial invalidation is inappropriate if the remainder of the statute . . . covers a whole range of easily identifiable and constitutionally proscribable . . . conduct . . . ." *Osborne*, 495 U.S. at 112 (alteration in the original) (internal citation and quotation marks omitted); *see also Hoffman Estates v. Flipside,*

-15-

*Hoffman Estates, Inc.*, 455 U.S. 489, 494 (1982) ("In a facial challenge to the overbreadth and vagueness of a law, a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct. If it does not, then the overbreadth challenge must fail." (footnote omitted)).

Section 2252A(a)(5)(B) punishes the (1) knowing possession of, *or* accessing with the intent to view, (2) any print material, film, or computer media, (3) containing an image of child pornography:

> Any person who . . . knowingly possesses, or knowingly accesses with intent to view, any book, magazine, periodical, film, videotape, computer disk, or any other material that contains an image of child pornography . . . .

18 U.S.C. § 2252A(a)(5)(B).[6]

The parties agree on much. In particular, they agree that the statute requires an offender to meet at least the following elements: (1) he must knowingly access *some* proscribed material; (2) he must intend to view that material; and (3) he must know that the material contains an image of child pornography.

Brune, however, argues that the statute's overbreadth is revealed by both its failure to specify that the defendant "inten[d] to view" the images of child

---

[6] Although it is not at issue in this case, the statute makes clear that the government must also prove "the child pornography has been mailed, or shipped or transported in interstate or foreign commerce." *United States v. Sturm*, 672 F.3d 891, 897 (10th Cir. 2012) (en banc) (quotation marks omitted).

pornography directly, and its use of the potentially far-reaching catchall "any other material." We examine, and reject, each contention.

### a. "With Intent to View"

Brune contends the statute is unconstitutionally overbroad since it does not require that the offender specifically intend to view an image of child pornography.

As we highlighted above, our review of the statutory text starts with a fair and commonsense assessment of the statute's reach. *United States v. Stevens*, 559 U.S. 460, 485 (2010) (reviewing animal cruelty statute). "[A] court should not invalidate a statute on its face simply because [it] may criminalize some protected speech." *Ward v. Utah*, 398 F.3d 1239, 1247 (10th Cir. 2005). Rather, we must guard that we do not "go beyond the statute's facial requirements and speculate about 'hypothetical' or 'imaginary' cases." *Wash. State Grange*, 552 U.S. at 450–51. But still we must also indulge "a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." *Broadrick*, 413 U.S. at 612.

It is Brune's burden to show, "'from the text of [the law] and from actual fact,' that substantial overbreadth exists." *Hicks*, 539 U.S. at 122 (alterations in the original) (quoting *N.Y. State Club Ass'n., Inc. v. City of New York*, 487 U.S. 1, 14 (1988)); *see also Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 801 (1984) ("[T]here must be a realistic danger that the statute itself will

-17-

significantly compromise recognized First Amendment protections of parties not before the Court for it to be facially challenged on overbreadth grounds.").

For a challenger to carry this burden, he must identify protected materials that would be inevitably targeted by the statute. *See Faustin v. City & County of Denver*, 423 F.3d 1192, 1201 (10th Cir. 2005) ("[I]n this case Faustin has presented no evidence and made no showing that Denver's policy has ever been applied to prohibit any expression on [highway] overpasses other than [clearly proscribable speech] or that Denver's policy has ever been so broadly interpreted by the public in a way that it has chilled any such speech."); *see also United States v. Sayer*, 748 F.3d 425, 435–36 (1st Cir. 2014); *United States v. Dean*, 635 F.3d 1200, 1206 (11th Cir. 2011). Indeed, overbreadth exists where a challenger can point to "actual fact[s]" that would permit unconstitutional applications of the statute. *N.Y. State Club Ass'n.,* 487 U.S. at 14 (rejecting an overbreadth challenge where the appellant failed to create a record of *existent* clubs to which the statute would be unconstitutionally applied in violation of the First Amendment). This requires a "statute's application to real-world conduct, not fanciful hypotheticals." *Stevens*, 559 U.S. at 485 (Alito, J., dissenting).

The Supreme Court's decision in *United States v. Stevens* is instructive. In that case, the defendant attacking the statute demonstrated that "depictions of ordinary and lawful activities . . . constitute the *vast majority* of materials subject

to the statute." *Stevens*, 559 U.S. at 473 (emphasis added).[7]  By contrast, Brune

has not described examples of constitutionally valuable speech that might be

punishable under the statute as he interprets it.  He provides no specific examples,

and his hypotheticals fall short of establishing that a considerable amount of

speech subject to the statute is deserving of protection.  For example, Brune

argues the statute might theoretically reach a 500-page book containing a great

deal of protected speech and a single image of child pornography.  Reply Br. at 8.

But in the end, "the mere fact that one can conceive of some impermissible

applications of a statute is not sufficient to render it susceptible to an overbreadth

challenge." *Taxpayers for Vincent*, 466 U.S. at 800.

To deny Brune's overbreadth challenge, therefore, we need not decide, as

he suggests, if an individual with no specific intent to view the image of child

pornography itself can be punished under the statute.[8]  Read either way, the

statute is not overbroad.  It is enough that, on the record before us, we see no

evidence that the impermissible applications of § 2252A(a)(5)(B), to the extent

---

[7]  In *Stevens*, the challengers of the statute submitted extensive documentation of actual movies, magazines, and books that would be subject to the statute despite their social, artistic, and literary value. *See generally* Br. for Respondent, *United States v. Stevens*, 559 U.S. 460 (2010) (No. 08-769), 2009 WL 2191081.

[8]  We note that in many ways Brune's reading of the statute is grammatically superior to the government's.  Still, Brune's argument fails because, even accepting his reading, the statute is not unconstitutionally overbroad because its legitimate sweep far exceeds its impermissible applications.

any exist, are substantial in comparison to the unprotected, criminal speech that the statute unquestionably covers. This is not to say that Brune's construction of the statute is frivolous or unjustifiable; but it is to say that his offered interpretations do little to expose the overbreadth of the statute in either an absolute or relative sense. *See, e.g.*, *Board of Trustees of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 485 (1989). And read contextually, we are convinced the statute's meaning is readily understandable and not overbroad.[9]

---

[9] The thrust of the Supreme Court's jurisprudence on child pornography strengthens our conclusion. As previously emphasized, child pornography is a category of speech unworthy of First Amendment protection. *Brown v. Entm't Merchs. Ass'n*, 131 S. Ct. 2729, 2763 (2011) (comparing the categorical prohibition on child pornography to less absolute areas of unprotected speech). Furthermore, the Court has consistently recognized that statutes banning the possession of child pornography are not chiefly aimed at shielding citizens from the content of the speech itself. *See Osborne*, 495 U.S. at 109–10. Instead, the harms underlying the creation of child pornography (including child sexual abuse), the economic motives for its production, and the market-making effects engendered by its existence all raise compelling concerns that justify congressional prohibitions on the production and possession of child pornography. *See Paroline v. United States,* 134 S. Ct. 1710, 1717 (2014); *see also Osborne*, 495 U.S. at 109–11; *Ferber*, 458 U.S. at 757–60. With these considerations in mind, § 2252A(a)(5)(B) is sufficiently tailored to support valid congressional interests without overreaching to circumscribe substantial amounts of protected speech. Nor does *Ashcroft* not change the result. In that case, the Supreme Court struck down portions of a federal child pornography statute, finding that a ban on *virtual* child pornography was unconstitutionally overbroad because those depictions cultivate only contingent and indirect harm to minors. *Ashcroft*, 535 U.S. at 250. Not so here. Section 2252A(a)(5)(B)'s target is materials containing *actual* depictions of child pornography, which indisputably breed the collection of harms that Congress reasonably seeks to eradicate.

In sum, we see no grounds for administering the "strong medicine" of overbreadth invalidation to § 2252A(a)(5)(B) because Brune cannot show substantial overbreadth in either an absolute or relative sense.

### b. "Any Other Material"

Brune's second effort to establish overbreadth is likewise insufficient. He argues that the phrase "any other material" is expansive and possibly limitless. He claims the phrase sweeps into the statute's orbit broad categories of media protected by the First Amendment. Aplt. Br. at 26–28 ("Unlike a book or movie – 'Material,' when such a term includes a web site or other internet based products, does not have a beginning and an end. It is not self-contained."). Taken to its extreme, Brune's position is that the statute potentially criminalizes all Internet access.

When viewed in isolation, it is difficult to dispute that "any other material" might be susceptible to several meanings—the nominal form of the word "material" is a flexible term that defies singular description.[10] But no statute is an island unto itself. We can look around to provide substance and context to a potentially unclear term. *See Tyler v. Cain*, 533 U.S. 656, 662 (2001) ("We do not . . . construe the meaning of statutory terms in a vacuum."). Since Congress

---

[10] It is likely that Congress intended "any other material" to remain somewhat vague in order to encapsulate a multitude of objects that could not be comprehensively and individually listed out. *See* Antonin Scalia and Bryan A. Garner, *Reading Law* 33 (1st ed. 2012).

has left undefined the word "material" and the phrase "any other material" in the statute, we give the terms their "ordinary meaning." *Kouichi Taniguchi v. Kan. Pac. Saipan, Ltd.*, 132 S. Ct. 1997, 2002 (2012). An inquiry into a statutory term's meaning must consider the ordinary, contemporary meaning at the time Congress enacted the statute. *BedRoc Ltd. v. United States*, 541 U.S. 176, 184 (2004).

Unlike many instances, simply resorting to a dictionary definition in this case is not especially helpful. The multiple definitions of "material" preclude an obvious, unitary usage.[11] Nevertheless, the possibility that several workable definitions of "material" can properly imbue the statute does not lead to an expansive reading of this term. In fact, the reverse is true as we are required to construe a phrase within a statute with reference to its accompanying words "in order to avoid the giving of unintended breadth to the Acts of Congress." *Jarecki v. G. D. Searle & Co.*, 367 U.S. 303, 307 (1961).

To this end, any lingering doubt about the limiting principle applicable to the residual phrase "any other material" is quickly satisfied by scrutinizing intrinsic statutory aids. First of all, the wording of the statute invites the application of the canon of construction of *ejusdem generis*: when "general words

---

[11] Webster's Third New International Dictionary, for example, offers more than five nominal definitions of "material," almost all of which could conceivably—albeit some more fittingly than others—apply to the statutory text. Webster's Third New International Dictionary 1392 (1986).

follow specific words in a statutory enumeration, the general words are construed

to embrace only objects similar in nature to those objects enumerated by the

preceding specific words." *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105,

114–15 (2001) (quoting 2A Norman J. Singer, Sutherland on Statutes and

Statutory Construction § 47.17 (5th ed. 1991)).  Stated another way, when a broad

reading of an undefined term serves to undermine Congress's decision to

specifically list items that the statute covers, then the undefined term can only be

defined with reference to the items that precede it.

Applied to § 2252A(a)(5)(B), *ejusdem generis* advises that "any other

material" should be construed as like in kind to, and *no more expansive in scope*

*than*, "book, magazine, periodical, film, videotape, [and] computer disk."  Those

terms denote specific, concrete forms of media that are used to capture, store, or

deliver information as a means of communication.  They are tangible illustrations

of media, rather than mediums themselves.  Brune's assertion that such a

definition creates an effective ban on the Internet is incorrect for this very

reason.[12]  The Internet is the medium; content available on the Internet, including,

at a minimum, downloadable digitized images of child pornography from unique

---

[12] The government does not help in arguing the statute is limited to only "webpages" in the Internet context.  That term is vague itself and provides little guidance as to what types of Internet material would be subject to the statute. Because it is unnecessary to do so for the statute to survive Brune's overbreadth attack, we decline to interpret the statute in the manner suggested by the government.

uniform resource locators (URLs), are the specific type of media that the statute targets.[13]

In addition, as between multiple reasonable interpretations of a statute, we will always prefer one that sustains constitutionality to one that does not under the presumption of constitutional validity. *NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 30 (1937) ("The cardinal principle of statutory construction is to save and not to destroy."). In fact, "every reasonable construction must be resorted to, in order to save a statute from unconstitutionality." *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 132 S. Ct. 2566, 2594 (2012) (quoting *Hooper v. California*, 155 U.S. 648, 657 (1895)). Here, reading the definition of "any other material" expansively, as Brune would have it, implicitly eviscerates the statute's element of scienter and criminalizes otherwise innocent conduct—a reading that smacks of overbreadth. *See United States v. X-Citement Video, Inc.*, 513 U.S. 64,

---

[13] As we explained in *United States v. Dobbs*, downloadable images on the Internet are automatically stored to a computer's cache when a person visits a URL on the Internet. 629 F.3d 1199, 1201–02 (10th Cir. 2011). One might argue that this fact presents an overbreadth problem with respect to § 2252A(a)(5)(B) for the careless Internet user who stumbles across a URL containing images of child pornography. But the government still must prove that the defendant "knowingly" accessed that URL. Without a "pattern of child-pornography-related searches immediately preceding the creation of illegal images in the cache," or similarly sufficient evidence, the government would have difficulty showing the knowing access of "material." *See id.* at 1205. As further protection against this scenario, and as we have already addressed, Brune concedes that the statute requires the offender to "know" that the "material" contains images of child pornography. *See supra* at 16.

70 (1994). Most users of the Internet are likely aware that child pornography exists on the Internet. Under Brune's broad interpretation of the statute, these innocuous Internet patrons, fully aware that the "Internet" contains child pornography somewhere in its disreputable underworld, would form the necessary intent to violate the statute the moment they logged on to access the Internet. That is not an obvious interpretation of the text, and reading it that way violates our duty to interpret a statute "where fairly possible so as to avoid substantial constitutional questions." *Id.* at 69; *see also Clark v. Martinez*, 543 U.S. 371, 381 (2005) ("[Constitutional avoidance] is a tool for choosing between competing plausible interpretations of a statutory text, resting on the reasonable presumption that Congress did not intend the alternative which raises serious constitutional doubts.").

So, to ensure that the statute maintains the broadly applicable scienter element required of a criminal statute, *see Morissette v. United States*, 342 U.S. 246, 263 (1952), it is necessary to understand "any other material" as something more precise than the "Internet." This limiting construction seems obvious from the statutory text, but, in the least, § 2252A(a)(5)(B) is "readily susceptible" to our interpretation and no "rewriting" is required to get there. *See Stevens*, 559 U.S. at 481.[14]

---

[14] In the vagueness context, which overlaps significantly with overbreadth, "[i]t has long been [the Supreme Court's] practice . . . before striking a federal

Because the Internet as a whole is not a "material" within the meaning of § 2252A(a)(5)(B), the degree to which the catchall provision must be further tapered is beyond the scope of an overbreadth challenge. Put simply, once the Internet is excluded from the tagalong phrase, "any other material," Brune's overbreadth challenge to the statute falls flat, regardless of what other materials are included within that phrase. Furthermore, there is no "realistic danger" that the statute as written will significantly chill protected speech, and we have not been made aware of any cases where the government has targeted innocent Internet browsing or related activity under this statute. *See Williams*, 553 U.S. at 302.

As a medium, the Internet has undoubtedly generated some complications in ascertaining the precise contours of the First Amendment in an age of technology that is constantly changing and difficult to define. *Cf. Sturm*, 672 F.3d at 901 (examining the extent to which "visual depictions" of child pornography refer to the substantive content of the image or a particular item containing that image for the purpose of establishing a federal jurisdictional nexus). Accordingly, and particularly in the context of child pornography, Congress and the Supreme Court have engaged in an ongoing effort to strike a careful balance between safeguarding constitutionally protected speech and

---

statute as impermissibly vague, to consider whether the prescription is amenable to a limiting construction." *Skilling v. United States*, 561 U.S. 358, 405 (2010).

enforcing legitimate criminal laws. *See, e.g.*, *Williams*, 553 U.S. at 292–93. That careful balance is not disrupted by § 2252A(a)(5)(B) because, again, any protected speech that falls under the ambit of the statute is insubstantial in comparison to its plainly legitimate sweep.

Brune has not sufficiently met his burden to demonstrate otherwise.

## III.  Conclusion

For the reasons expressed above, we AFFIRM the district court's denials of Brune's motions to dismiss his indictment.

United States v. Brune, No. 12-3322

**PHILLIPS**, J., concurring in part and concurring in the judgment.

I concur in the judgment because I agree that SORNA is constitutional as applied to Brune and that 18 U.S.C. § 2252A(a)(5)(B) withstands Brune's overbreadth challenge under the First Amendment. But I don't join one part of the majority's opinion discussing the elements under § 2252A(a)(5)(B). The statute makes it a crime when a person:

> knowingly possesses, or knowingly accesses with intent to view, any book, magazine, periodical, film, videotape, computer disk, or any other material that contains an image of child pornography that has been mailed, or shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer, or that was produced using materials that have been mailed, or shipped or transported in or affecting interstate or foreign commerce by any means, including by computer.

18 U.S.C. § 2252A(a)(5)(B) (2012).

The majority concludes that the statute requires proof of "(1) knowing possession of, *or* accessing with the intent to view, (2) any print material, film, or computer media, (3) containing an image of child pornography[.]" [1] In one key respect, that recitation does not reflect my understanding of § 2252A(a)(5)(B).

The majority's recitation of the elements suggests that the government must prove that the defendant intended to view only the material containing child pornography—not the child pornography itself. That's not my view. I believe that § 2252A(a)(5)(B) requires proof that the defendant intended to view an image of child pornography. On this point, I

---

[1] *United States v. Brune*, No. 12-3322, slip op. at 17 (10th Cir. [DATE] 2014). In a footnote it adds as a fourth element the interstate nexus, which, I agree, is not at issue in this case.

concede that the statute is not a model of legislative drafting. Here, I would consider the legislative history to help find Congress's meaning. In my view, the amendment to § 2252A(a)(5)(B) demonstrates that the intent-to-view requirement attaches to the image of child pornography.[2]

If indeed the statute does require proof that Brune intended to view child pornography, we need not fine-tune what qualifies as *any other material* to defeat Brune's First Amendment challenge. The Supreme Court has held that requests to obtain child pornography are "categorically excluded from the First Amendment." *See United States v. Williams*, 553 U.S. 285, 299 (2008). In other words, a person who intends to view child pornography gets no protection under the First Amendment. Because the statute applies only to persons accessing child pornography and intending to view it, the statute implicates no protected speech under the First Amendment and accordingly is not overbroad.

For these reasons, I concur in part and concur in the judgment.

---

[2] Enhancing the Effective Prosecution of Child Pornography Act of 2007, Pub. L. No. 110-358, 122 Stat. 4003 (2008) (designating section 3 as "Knowingly accessing child pornography *with the intent to view child pornography*" (emphasis added)); S. Rep. No. 110-332, at 5 (2008).