*Roberts v. Capital One, N.A.*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, at 40 Foley Square, in the City of New York, on the 1st day of December, two thousand seventeen.

Present:    ROBERT A. KATZMANN,
                          *Chief Judge*,
                  JOHN M. WALKER, JR.,
                  GUIDO CALABRESI,
                          *Circuit Judges*.

_____

TAWANNA M. ROBERTS, on behalf of herself and all others similarly situated,

                          *Plaintiff-Appellant*,

                  v.                                             No. 17-1762

CAPITAL ONE, N.A.,

                          *Defendant-Appellee*,

CAPITAL ONE FINANCIAL CORPORATION, dba
CAPITAL ONE BANK,

                          *Defendant.*

_____

For Plaintiff-Appellant:          MATTHEW W.H. WESSLER (Deepak Gupta and Matthew
                                          Spurlock, Gupta Wessler PLLC; Jeffrey Kaliel and Hassan A.
                                          Zavereei, Tycko & Zavareei LLP, *on the brief*), Gupta Wessler
                                          PLLC, Washington, DC.

For Defendant-Appellee:  JOSEPH R. PALMORE (James R. McGuire, San Francisco, CA, Jessica L. Kaufman, New York, NY, Sophia M. Brill, Washington, DC, Morrison & Foerster, *on the brief*), Morrison & Foerster LLP.

For *Amici Curiae* Center for Responsible Lending, National Consumer Law Center, and New Economy Project:  Rebecca K. Borné, Center for Responsible Lending, Washington, DC.

Appeal from the United States District Court for the Southern District of New York (Schofield, *J.*).

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED,** and **DECREED** that the judgment of the district court is **AFFIRMED IN PART** and **VACATED IN PART**.

Plaintiff-Appellant Tawanna Roberts appeals from a final judgment entered by the district court (Schofield, *J.*) on May 5, 2017, dismissing her complaint against Defendant-Appellee Capital One, N.A., for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. We assume the parties' familiarity with the underlying facts, the procedural history, and the issues on appeal.

Roberts has maintained a checking account with Capital One since 2014 and has a debit card linked to that account. The relevant terms of the parties' relationship were set forth in two agreements: Capital One's Rules Governing Deposit Accounts (the "Deposit Agreement") and its Electronic Fund Transfer Agreement and Disclosure for Personal and Commercial Accounts (the "EFT Agreement"), each of which addresses the imposition of overdraft fees by Capital One. Citing overdraft practices by Capital One that allegedly differ from the parties' contractual arrangement, Roberts brought five causes of action against the bank: (1) breach of contract, (2)

2

breach of the covenant of good faith and fair dealing, (3) conversion, (4) unjust enrichment, and (5) violation of New York General Business Law § 349. Each was dismissed by the district court. *Roberts v. Capital One, N.A.*, No. 16 Civ. 4841, 2017 WL 1750445 (S.D.N.Y. May 4, 2017).

According to Roberts, the parties' agreements provide that an overdraft occurs when Capital One "elect[s] to pay" certain costs. Roberts Br. at 1 (quoting App. 39). Capital One, on the other hand, reads the agreements as establishing that "overdrafts occur when Capital One *pays* merchants for transactions—an occurrence that can happen at a separate and later time." Capital One Br. at 12. Capital One's alleged business practices comport with its reading of the parties' agreements, but they do not comport with Roberts' understanding of the agreements. Put another way, the principal question presented by this matter is whether Capital One has breached the parties' agreement by assessing overdraft fees when it *settles* transactions (*i.e.*, at the time that Capital One actually pays merchants), rather than when it *authorizes* transactions (*i.e.*, at the time that a merchant queries Capital One as to whether it should proceed in a transaction with a Capital One account-holder, which may occur several days prior to settlement).[1]

Capital One argues that Roberts has forfeited any argument based on the "elect to pay" language found in the Deposit Agreement, upon which Roberts now focuses. Capital One is correct that Roberts' argument on appeal differs from those she presented to the district court, but that is not dispositive. Although "it is a well-established general rule that an appellate court

---

[1] To understand the import of this distinction, consider a simple scenario in which an individual has $10 in his Capital One bank account. On day one he makes four $1 purchases, on day two he makes one $10 purchase that is settled the same day, and on day three his four $1 purchases are settled. If overdrafts are assessed based upon the funds available at the time each of the transactions was *authorized*, he will pay a single overdraft fee for his $10 purchase on day two. But if overdraft fees are based on the funds available at the time each of the transactions was *settled*, on the other hand, he will pay four overdraft fees—one for each of the $1 purchases that settled on day three, after settlement of the $10 transaction reduced his available funds to $0 on day two. The very same purchases could thus lead to a four-fold increase in overdraft fees if overdrafts are assessed at settlement as compared to authorization.

will not consider an issue raised for the first time on appeal," it "is not an absolute bar" because "[e]ntertaining issues raised for the first time on appeal is discretionary with the panel hearing the appeal." *Greene v. United States*, 13 F.3d 577, 586 (2d Cir. 1994). "Exercise of that discretion is particularly appropriate where," as here, "an argument presents a question of law and does not require additional fact finding." *United States v. Brunner*, 726 F.3d 299, 304 (2d Cir. 2013). Moreover, the district court placed the Deposit Agreement's "elect to pay" language at issue by citing to it repeatedly in addressing the breach of contract claim. *See Roberts*, 2017 WL 1750445, at \*3. In light of the district court's reliance on this aspect of the Deposit Agreement, we hereby exercise our discretion to address the merits of Roberts' argument in the first instance. *See, e.g.*, *United States v. Clariot*, 655 F.3d 550, 556 (6th Cir. 2011) ("When a district court resolves an issue, the losing party can challenge it. Otherwise, the more surprising a district court decision in terms of resolving unbriefed and unargued points, the more insulated from review that decision would be."); *Blackmon-Malloy v. U.S. Capitol Police Bd.*, 575 F.3d 699, 707-08 (D.C. Cir. 2009) ("Review here is . . . appropriate because the district court 'passed upon' the . . . issue appellants now present to this court.").

Turning to the merits, we agree with Roberts that the district court erred in dismissing her contract claim.[2] The key provision in this appeal is the first sentence of the Deposit Agreement's "overdraft" provision, which provides as follows: "We may in our sole discretion, and without obligation, elect to pay checks and other items drawn on your deposit account or to permit automatic bill payments and withdrawals against your account for an amount in excess of your available balance (an 'Overdraft')." App. 39. Although this sentence attempts to define the term "Overdraft" for purposes of the parties' agreements, it fails to provide "a definite and precise

---

[2] Although the agreements at issue do not specify which state's laws govern this dispute, we assume that New York contract law applies in light of the parties' citations to New York caselaw, as well as their failure to assert that the district court erred in applying New York law. *See Roberts*, 2017 WL 1750445, at \*2.

meaning," *JA Apparel Corp. v. Abboud*, 568 F.3d 390, 396 (2d Cir. 2009) (internal quotation marks omitted), because it simply tacks a parenthetical purporting to define the term on to the end of a grammatically complex sentence, without making clear which portions of the sentence are meant to be subsumed within that definition. Accordingly, it is equally reasonable to understand the term "Overdraft" as referring to Capital One's election to make a payment, which would occur at the time of authorization (as asserted by Roberts), or as referring to the payment itself, which would occur at the time of settlement (as asserted by Capital One). Because this fundamental definition is "subject to more than one reasonable interpretation," it is ambiguous. *Universal Am. Corp. v. Nat'l Union Fire Ins. Co.*, 37 N.E.3d 78, 80 (N.Y. 2015). And because it is ambiguous, dismissal was improper. *See JA Apparel*, 568 F.3d at 397 ("the meaning of the ambiguous contract is a question of fact for the factfinder"). Moreover, this ambiguity infects several other provisions of both agreements that employ the defined term "Overdraft," effectively incorporating its lack of clarity by reference.

In finding that the parties' agreements "expressly provide that an overdraft occurs when [Capital One] *pays*—and not merely authorizes—a transaction in an amount that exceeds a customer's available balance," the district court relied on the ambiguous definition of "Overdraft," as well as another clause from the Deposit Agreement that similarly imposes "'Overdraft fees for each Overdraft item'" when Capital One "'elect[s] to *pay* Overdraft items.'" *Roberts*, 2017 WL 1750445, at *3 (quoting App. 39) (emphases in district court opinion); *see also* App. 54 (employing identical language in EFT Agreement). In doing so, the district court repeatedly emphasized the word "pay" without explaining what significance, if any, it attributed to the transitive verb "elect to" in each clause using that formulation. "Because we are not free to 'rewrite . . . a contract . . . by adding or excising terms under the guise of construction,'" failing

5

to give meaning to the phrase "elect to" throughout the Deposit Agreement's pertinent provisions was also error. *Bank of N.Y. Mellon Trust Co., N.A. v. Morgan Stanley Mortg. Capital, Inc.*, 821 F.3d 297, 307 (2d Cir. 2016) (quoting *Slamow v. Del Col*, 571 N.Y.S.2d 335, 336 (N.Y. App. Div. 1991)); *see also Columbus Park Corp. v. Dep't of Hous. Pres. & Dev.*, 598 N.E.2d 702, 708 (N.Y. 1992) ("Such a construction which makes a contract provision meaningless is contrary to basic principles of contract interpretation.").

In the hopes of clarifying the ambiguity identified by Roberts, Capital One points to several other provisions dispersed throughout the parties' agreements that it asserts clarify that overdrafts are assessed at the time of settlement. Yet these other provisions are similarly opaque and problematic. For example, the EFT Agreement provides that "[a]n Overdraft occurs when you do not have enough money in your designated account to cover a transaction, but we pay it anyway," App. 54, which Capital One reads to refer to occasions on which "a customer has a negative available balance in her account at the time Capital One pays for a transaction," Capital One Br. at 14. But the phrase "at the time Capital One pays for" does not appear in the agreement itself. Capital One seems to presume that the "transaction" in question refers to its settlement with the merchant, which is certainly a plausible reading of the agreement, but it would hardly be implausible for a consumer to think that "a transaction" refers to the consumer's transaction with a merchant, such that the assessment of whether their account holds sufficient funds refers to the funds available at the time that the consumer-merchant transaction is authorized by Capital One. Similarly, the Deposit Agreement provides that a consumer "can avoid Overdrafts . . . by always making sure that [they] have sufficient available funds in [their] account to cover all of the debits presented for payment," App. 39, without clarifying when the sufficiency of funding is determined or whether the referenced presentation for payment might

6

be the consumer's initial agreement to pay the merchant. With respect to this provision, Capital One's preferred "interpretation of the agreement . . . makes little sense from [the account-holder's] point of view," as a reasonable consumer likely considers something to have been paid for when they swipe their debit card, not when their bank's back-office operations are completed. *See Cheng v. Modansky Leasing Co., Inc.*, 539 N.E.2d 570, 573 (N.Y. 1989) ("If the letter was ambiguous because it did not state [terms] explicitly, then its terms must be strictly construed against the drafter[.]").

Lastly, Roberts notes in passing that the district court's "flawed interpretation of the parties' agreements led it to dismiss all of the claims in the case," such that reinstatement of her contract claim necessitates reversing the dismissal of her remaining claims as well. Roberts Br. at 23 n.3. We decline to consider whether Roberts' common-law causes of action were properly dismissed because "'issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived,'" a rule with "particular force where an appellant makes an argument only in a footnote," as was done here. *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 107 (2d Cir. 2012) (quoting *Tolbert v. Queens Coll.*, 242 F.3d 58, 75 (2d Cir. 2001)); *see also* Fed. R. App. 28(a)(8)(A). We nevertheless reverse the dismissal of Roberts' New York General Business Law § 349 claim, based upon Capital One's concession that it "should" be remanded for the district court to consider whether it is preempted by federal banking regulations in light of our ruling on the parties' contractual dispute. Capital One Br. at 34-35.

For the foregoing reasons, we **AFFIRM** the judgment of the district court with respect to Roberts' causes of action for breach of the covenant of good faith and fair dealing, conversion, and unjust enrichment, and we **VACATE** the judgment of the district court with respect to

7

Roberts' causes of action for breach of contract and violation of New York General Business

Law § 349.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK