FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
                *Plaintiff-Appellee*,

v.

JORGE HUMBERTO THUM,
                *Defendant-Appellant*.

No. 13-50176

D.C. No.
3:08-cr-00840-DMS-2

OPINION

Appeal from the United States District Court
for the Southern District of California
Dana M. Sabraw, District Judge, Presiding

Argued and Submitted
April 7, 2014—Pasadena, California

Filed April 25, 2014

Before: Sidney R. Thomas, Milan D. Smith, Jr.,
and Morgan Christen, Circuit Judges.

Opinion by Judge Milan D. Smith, Jr.

## SUMMARY[*]

### Criminal Law

Vacating the district court's judgment revoking supervised release, the panel held that the defendant did not encourage or induce an illegal alien to reside in the United States in violation of 8 U.S.C. § 1324(a)(1)(A)(iv), nor aid and abet the commission of that crime in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(II), merely by escorting an alien from a fast food restaurant near the border to a nearby vehicle.

The panel remanded with instructions to dismiss the petition.

### COUNSEL

Devin Burstein (argued), Federal Defenders of San Diego, Inc., San Diego, California, for Defendant-Appellant.

Ryan A. Sausedo (argued) and Bruce R. Castetter, Assistant United States Attorneys, San Diego, California, for Plaintiff-Appellee.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## OPINION

M. SMITH, Circuit Judge:

In this appeal, we consider whether Jorge Humberto Thum encouraged or induced an illegal alien to reside in the United States, in violation of 8 U.S.C. § 1324(a)(1)(A)(iv), or aided and abetted the commission of this crime, in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(II), merely by escorting that alien from a fast food restaurant near the border to a nearby vehicle. We conclude that he did not. Accordingly, we vacate the district court's judgment revoking Thum's supervised release, and we remand with instructions to dismiss the petition.

## FACTUAL AND PROCEDURAL BACKGROUND

Thum is a United States citizen with a history of convictions for smuggling illegal aliens. In 2008, the district court sentenced Thum to 33 months of incarceration and two years of supervised release after he pleaded guilty to transporting an illegal alien, in violation of 8 U.S.C. § 1324(a)(1)(A)(ii), and aiding and abetting, in violation of § 1324(a)(1)(A)(v)(II). On September 30, 2011, the district court imposed an additional two-year term of supervised release after Thum admitted to failing to maintain contact with his probation officer.

On November 19, 2012, federal agents arrested Thum near the San Ysidro Port of Entry in Southern California. On November 30, 2012, a probation officer in the Southern District of California filed a petition alleging that Thum violated 8 U.S.C. § 1324(a)(1)(A)(iv), and therefore violated the terms of his supervised release by committing another

federal crime.  Thum denied the allegation, and the district court held an evidentiary hearing on April 10, 2013.

At the evidentiary hearing, Special Agent Prescilla Gonzalez of the Department of Homeland Security testified that, on November 19, 2012, federal agents followed a man named Aldo Varguez-Rodriguez from the San Ysidro Port of Entry to a Jack in the Box fast food restaurant near the border.  The agents decided to follow Varguez-Rodriguez because they suspected that he had presented a false identification card to the primary inspection officer at the border, and that he lacked permission to enter the United States.

Agent Gonzalez testified that, upon entering the Jack in the Box restaurant, Varguez-Rodriguez sat alone at a table for a few minutes.  Shortly thereafter, Thum joined him, and the two men conversed briefly.[1]  Next, Thum and Varguez-Rodriguez left the restaurant together and crossed the street to a "transportation van area" where vans waited to take passengers to Los Angeles.  Thum then spoke with a ticket salesperson.  Immediately thereafter, Thum and Varguez-Rodriguez were arrested when they attempted to enter one of the vans.

After arresting Thum, the agents brought him to the Port of Entry and questioned him.  Thum told the agents that an acquaintance of his named Chapalin was an alien smuggler.

---

[1] At the hearing, Agent Gonzalez testified about the contents of Varguez-Rodriguez and Thum's conversation based on Varguez-Rodriguez's post-arrest statements.  The district court sustained Thum's objection to this testimony on hearsay grounds, and neither party relies on it.

Chapalin had spoken with Thum earlier that day and told Thum that he planned to transport two illegal aliens from the border to Northern California. Chapalin offered to transport Thum to Carlsbad, California if Thum agreed to escort an illegal alien—Varguez-Rodriguez—from the Jack in the Box restaurant to a nearby vehicle. Agent Gonzalez further testified that agents later confirmed that Varguez-Rodriguez was an illegal alien.

The government also called Probation Officer Edward Nover II, who testified that, in his opinion, Thum had violated the conditions of his supervised release. No other evidence was taken. Based on the testimony at the evidentiary hearing, the district court sustained the government's allegation, revoked Thum's supervised release, sentenced him to time served, and imposed an additional two-year term of supervised release. In so doing, the district court concluded that Agent Gonzalez's testimony showed that Thum had committed the crime of "encouraging or inducing [an illegal alien] to reside in the United States," in violation of 8 U.S.C. § 1324(a)(1)(A)(iv), because "[o]ne can more readily reside in the United States if he is . . . taken away from the Port of Entry and away from ICE agents and others." Thum timely appealed.

## JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction under 28 U.S.C. § 1291. *United States v. Rojas-Pedroza*, 716 F.3d 1253, 1260 (9th Cir. 2013). We review a district court's revocation of a term of supervised release for an abuse of discretion. *United States v. Verduzco*, 330 F.3d 1182, 1184 (9th Cir. 2003). In evaluating the sufficiency of the evidence supporting a supervised release revocation, "we ask whether, 'viewing the

evidence in the light most favorable to the government, any rational trier of fact could have found the essential elements of a violation' by 'a preponderance of the evidence.'" *United States v. King*, 608 F.3d 1122, 1129 (9th Cir. 2010) (quoting *United States v. Jeremiah*, 493 F.3d 1042, 1045 (9th Cir. 2007)).

## DISCUSSION

Thum argues that the evidence before the district court was insufficient to establish that he encouraged or induced an illegal alien (i.e., Varguez-Rodriguez) to reside in the United States. Thum further contends that the evidence was insufficient to prove that he aided or abetted Chapalin in encouraging or inducing an illegal alien to reside in this country. We address these arguments in turn.

## I.   Encourages or Induces

Thum first argues that the evidence was insufficient to prove that he encouraged or induced Varguez-Rodriguez to reside in the United States, in violation 8 U.S.C. § 1324(a)(1)(A)(iv). His argument focuses chiefly on the statutory text. Under § 1324(a)(1)(A)(iv), it is a federal crime to "encourage[] or induce[] an alien to come to, enter, or reside in the United States, knowing or in reckless disregard of the fact that such coming to, entry, or residence is or will be in violation of law." As we have previously explained, 8 U.S.C. § 1324 codifies "several discrete immigration offenses, including: (1) bringing an alien to the United States; (2) transporting or moving an illegal alien within the United States; (3) harboring or concealing an illegal alien within the United States; and (4) encouraging or inducing an illegal alien to enter [or reside in] the United States." *United States*

*v. Lopez*, 484 F.3d 1186, 1190–91 (9th Cir. 2007) (en banc). Thum argues that the evidence here—i.e., that he escorted an illegal alien from a restaurant to a van, knowing that the alien would be transported to Northern California—shows, at most, that he aided in the attempted *transportation* of the alien, which would be covered under 8 U.S.C. § 1324(a)(1)(A)(ii).[2] Thum asserts, however, that there is no evidence suggesting that he did anything to encourage or induce the alien to reside in this country. And he maintains that encouraging or inducing an illegal alien to reside in the United States must mean something other than aiding in the transportation of an illegal alien within this country.

Even viewing the evidence in the light most favorable to the government, *see King*, 608 F.3d at 1129, Thum's argument is persuasive. In *Lopez*, we explained that each of the immigration offenses codified in 8 U.S.C. § 1324 is "discrete," and that Congress intended each to "cover different groups of wrongdoers." *Lopez*, 484 F.3d at 1190, 1197. As such, we rejected an interpretation of the statute that would elide the distinction between bringing an illegal alien into the United States, in violation of 8 U.S.C. § 1324(a)(2)(B)(ii), and transporting an illegal alien within the United States, in violation of 8 U.S.C. § 1324(a)(1)(A)(ii). *Lopez*, 484 F.3d at 1197. Similarly here, under the government's and the district court's interpretation of the statute, a defendant who transported an illegal alien within the

---

[2] 8 U.S.C. § 1324(a)(1)(A)(ii) criminalizes "knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, transport[ing], or mov[ing] or attempt[ing] to transport or move such alien within the United States by means of transportation or otherwise, in furtherance of such violation of law." Thum does not concede that the evidence was sufficient to show that he committed any crime.

United States would also have encouraged that alien to reside in the United States. This reading of the statute is foreclosed by *Lopez*, as it would render the statutory ban on transporting illegal aliens within the United States a mere subset of the prohibition on encouraging such aliens to reside in this country.

The government counters that its broad reading of "encourages or induces" to "reside" is compelled by the plain language of the statute, and that Thum encouraged Varguez-Rodriguez to remain in this country by assisting in his attempt to travel north. This argument is unpersuasive. At the outset, we agree with the government, and the Seventh Circuit, that "to encourage" means "to inspire with courage, spirit, or hope . . . to spur on . . . to give help or patronage to." *United States v. He*, 245 F.3d 954, 960 (7th Cir. 2001) (quoting Merriam Webster's Collegiate Dictionary 381 (10th ed. 1996)). Indeed, we have previously equated "encouraged" with "helped." *United States v. Yoshida*, 303 F.3d 1145, 1150 (9th Cir. 2002).

But the government's argument that Thum encouraged Varguez-Rodriguez to *reside* in the United States merely by escorting him to a van that Thum knew was traveling north clashes with the statutory text. It is axiomatic that "a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Corley v. United States*, 556 U.S. 303, 314 (2009) (internal quotation marks and alterations omitted); *see also United States v. Lin*, 738 F.3d 1082, 1084 (9th Cir. 2013) (rejecting an interpretation of one statutory provision that "would leave no work to be done by" another). And here, reading "encourages" under § 1324(a)(1)(A)(iv) as broadly as the government seeks "would leave no work to be

done by" the separate ban on transporting an illegal alien within the United States under § 1324(a)(1)(A)(ii). *Lin*, 738 F.3d at 1084. We therefore reject the government's reading of § 1324(a)(1)(A)(iv).[3]

Our decision in *Yoshida*, on which the government relies, does not compel a contrary conclusion. In that case, the defendant escorted three aliens onto an airplane and accompanied them from Japan to the United States. *Yoshida*, 303 F.3d at 1148. We affirmed the defendant's conviction for both encouraging or inducing the aliens to enter the United States, under § 1324(a)(1)(A)(iv), and bringing those aliens to the United States, under § 1324(a)(2)(B)(ii). *Id.* at 1149. The government correctly observes that, under *Yoshida*, the same criminal conduct may violate more than one provision of § 1324 at the same time. Accordingly, if Thum had both assisted in the transportation of an illegal alien within the United States *and* taken steps to encourage that alien to reside here, *Yoshida* would permit the revocation of his supervised release under both the "encourages or induces" and the

---

[3] The government argues that *Lopez* should not apply here because "an encouraging offense and a transportation offense both carry the same maximum penalties and no mandatory minimum penalty," and therefore "[n]othing would be gained" by interpreting § 1324 "to eliminate any potential overlap between the two offenses." But, regardless of such practical concerns, we must construe § 1324 in a manner that gives independent effect to each of its provisions. *Corley*, 556 U.S. at 314. Further, before a district court may revoke a probationer's supervised release, due process requires that the probationer "receive notice of the specific statute he is charged with violating." *United States v. Havier*, 155 F.3d 1090, 1093 (9th Cir. 1998). Here, the government proceeded against Thum under 8 U.S.C. § 1324(a)(1)(A)(iv), and not under § 1324(a)(1)(A)(ii). The mere fact that the two distinct crimes may carry the same maximum punishment does not excuse the government's failure to charge Thum under the proper statutory provision.

"transports within" provisions of § 1324. But, as discussed above, Thum took no steps to encourage an illegal alien to reside in this country, and nothing in *Yoshida* supports the proposition that the "encourages or induces" provision is violated whenever a defendant engages in conduct that may violate the "transports within" provision. *Yoshida* is therefore inapposite.

Rather, as Thum argues, the out-of-circuit decisions in *United States v. Ndiaye*, 434 F.3d 1270, 1298 (11th Cir. 2006), and *United States v. Oloyede*, 982 F.2d 133, 135–37 (4th Cir. 1993) (per curiam), provide more useful guidance here. In *Ndiaye*, the Eleventh Circuit concluded that a defendant who enabled an illegal alien to work in the United States without fear of detection by supplying the alien with a Social Security number to which he was not entitled was properly convicted of encouraging the alien to reside here. *Ndiaye*, 434 F.3d at 1298. Similarly, in *Oloyede*, the Fourth Circuit concluded that the defendant encouraged illegal aliens to reside in the United States by providing them with false documents for citizenship applications. *Oloyede*, 982 F.2d at 137. As these cases demonstrate, a defendant "encourages" an illegal alien to "reside" in the United States when the defendant takes some action "to convince the illegal alien to . . . stay in this country," *id.*, or to facilitate the alien's ability to live in this country indefinitely, *see Ndiaye*, 434 F.3d at 1298.

In this case, by contrast, the government proffered no evidence showing that Thum did anything to persuade, or even assist, an illegal alien to *reside* here. Rather, the evidence viewed in the light most favorable to the government merely shows that Thum attempted to help an illegal alien *travel* within the United States. As discussed

above, if merely facilitating the transportation of an illegal alien within this country sufficed to show "encouragement," then the separate statutory prohibition on "transportation" would be superfluous. As such, the evidence was insufficient to support the district court's conclusion that Thum violated his supervised release by encouraging an illegal alien to reside in the Untied States.

## II. Aiding and Abetting

Just as the evidence was insufficient to find that Thum encouraged an illegal alien to reside in the United States, there was insufficient evidence to show that Thum aided and abetted the commission of this crime. In revoking Thum's supervised release, the district court concluded that Thum "was aiding and abetting Chapalin in [Varguez-Rodriguez] residing in the United States." The government attempts to support this decision by observing that Thum knew that Varguez-Rodriguez was an illegal alien, that Chapalin was an alien smuggler, and that Chapalin intended to transport Varguez-Rodriguez from the border to Northern California. But while this evidence may have been sufficient to show that Thum aided and abetted Chapalin's attempted *transportation* of an illegal alien, there is no evidence to show that Thum aided and abetted Chapalin in encouraging an illegal alien to reside in the United States.[4]

---

[4] The government also argues that a rational trier of fact could have concluded that Thum aided Chapalin in encouraging an illegal alien to enter the United States, which is also prohibited under § 1324(a)(1)(A)(iv). But we discern no evidence in the record showing that Thum had anything to do with Varguez-Rodriguez's decision to enter this country illegally.

"In this circuit, the elements necessary for an aiding and abetting conviction are: (1) that the accused had the specific intent to facilitate the commission of a crime by another, (2) that the accused had the requisite intent of the underlying substantive offense, (3) that the accused assisted or participated in the commission of the underlying substantive offense, and (4) that someone committed the underlying substantive offense." *United States v. Shorty*, 741 F.3d 961, 969–70 (9th Cir. 2013) (quoting *United States v. Singh*, 532 F.3d 1053, 1057–58 (9th Cir. 2008)). Even viewing the evidence in the light most favorable to the government, there is no evidence that Chapalin "committed the underlying substantive offense" by encouraging an illegal alien to reside in the United States. *Shorty*, 741 F.3d at 970.

Encouraging an illegal alien to reside in the United States must mean something more than merely transporting such an alien within this country. *See United States v. Sanchez-Vargas*, 878 F.2d 1163, 1169 (9th Cir. 1989) ("[T]he transport offense was directed, in large part, at curbing the widespread practice of transporting illegal immigrants, already in the United States, to jobs and locations away from the border where immigration enforcement resources may have been more scarce."). And here, the evidence showed only that Chapalin sought to transport illegal aliens to Northern California. On this scant record, no rational trier of fact could conclude that Chapalin encouraged an illegal alien to reside in the United States. Accordingly, there was insufficient evidence to prove that Thum aided and abetted Chapalin in so doing. *See Shorty*, 741 F.3d at 970.

**CONCLUSION**

For the foregoing reasons, we vacate the district court's judgment revoking Thum's supervised release, and we remand with instructions to dismiss the petition.

**VACATED AND REMANDED, with instructions.**