FOR PUBLICATION

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

<table>
<tr><td>UNITED STATES OF AMERICA,<br><i>Plaintiff-Appellee</i>,<br><br>v.<br><br>EVELYN SINENENG-SMITH,<br><i>Defendant-Appellant.</i></td><td>No. 15-10614<br><br>D.C. No.<br>5:10-cr-0414-RMW<br><br>OPINION</td></tr>
</table>

On Remand from the Supreme Court of the United States

Filed December 8, 2020

Before: A. Wallace Tashima, Marsha S. Berzon, and Andrew D. Hurwitz, Circuit Judges.

Opinion by Judge Tashima

## SUMMARY*

---

### Criminal Law

On remand from the Supreme Court, the panel affirmed convictions on two counts of encouraging and inducing an alien to remain in the United States for the purposes of financial gain (8 U.S.C. §§ 1324(a)(1)(A)(iv) and 1324(a)(1)(B)(i)), in a case in which the defendant, who operated an immigration consulting firm, continued to sign retainer agreements and inform clients that they could obtain green cards via a labor certification program under Section 245i of the Immigration and Nationality Act, which the defendant knew had expired.

The panel rejected the defendant's argument that Subsection (A)(iv) is limited to conduct involving fraud, false documents, or fraud against the government; and held that the fact that engaging in the underlying § 245i process may have yielded some legitimate benefit to the defendant's clients does not detract from the defendant's culpability under Subsection (A)(iv).

Rejecting the defendant's contention that she lacked fair notice that her conduct violated the law, the panel wrote that the charged conduct fell within the plain meaning of the statute. The panel wrote that the fact that the government approved numerous labor certification and I-140 alien-worker petitions for the defendant's clients did not deprive her of fair notice that her representations to the clients covered by the

---

* This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

charges—knowingly misleading them into believing that the approved petitions could lead to permanent residence and thereby encouraging them to remain illegally in the country—constituted unlawful encouragement.

The panel rejected the defendant's contention that interpreting Subsection (A)(iv) to prohibit the charged conduct renders the statute impermissibly vague as applied to her. The panel also rejected the defendant's contention that the charged conduct was protected by the Free Speech and Petition Clauses of the First Amendment.

Rejecting the defendant's challenge to the sufficiency of the evidence, the panel held that a rational trier of fact could have found beyond a reasonable doubt that the defendant, who provided two clients with the false hope that their retention of her services for each step in the § 245i labor certification process could lead to permanent residency, encouraged them to remain in the United States in violation of Subsection (A)(iv).

---

**COUNSEL**

Daniel F. Cook, Bodega Bay, California, for Defendant-Appellant.

Susan B. Gray, Assistant United States Attorney; J. Douglas Wilson, Chief, Appellate Section; United States Attorney's Office, San Francisco, California; Elizabeth D. Collery, Attorney, Criminal Division; John P. Cronan, Principal Deputy Assistant Attorney General; Kenneth A. Blanco, Acting Assistant Attorney General; United States Department of Justice, Washington, D.C.; for Plaintiff-Appellee.

Mark C. Fleming and Megan E. Barriger, Wilmer Cutler Pickering Hale & Dorr LLP, Boston, Massachusetts; Beth C. Neitzel, Wilmer Cutler Pickering Hale & Dorr LLP, Washington, D.C.; for Amici Curiae Immigrant Defense Project, and National Immigration Project of the National Lawyers Guild.

Annie Hudson-Price and Mark Rosenbaum, Public Counsel, Los Angeles, California, for Amicus Curiae Public Counsel.

Stephen R. Sady, Chief Deputy Federal Public Defender; Lisa Ma, Research and Writing Attorney, Portland, Oregon; Carmen A. Smarandoiu, Assistant Federal Public Defender, San Francisco, California; for Amicus Curiae Federal Defender Organizations of the Ninth Circuit.

Lee Rowland, Cecillia D. Wang, Anand Balakrishnan, ACLU Foundation, New York, New York; Christine Patricia Sun, American Civil Liberties Union Foundation of Northern California, Inc.; for Amici Curiae American Civil Liberties Union, and American Civil Liberties Union of Northern California.

Eugene Volokh, Scott & Cyan Banister First Amendment Clinic, UCLA School of Law, Los Angeles, California, as Amicus Curiae.

Elliott Schulder, Tina M. Thomas, Nicole Y. Roberts, Covington & Burling LLP, Washington, D.C.; Robin Wechkin, Sidley Austin LLP, Seattle, Washington; for Amicus Curiae National Association of Criminal Defense Lawyers.

Dennis J. Herrera, City Attorney; Christine Van Aken, Chief of Appellate Litigation; Yvonne T. Mere, Chief of Complex and Affirmative Litigation; Molly M. Lee and Matthew S. Lee, Deputy City Attorneys; Office of the City Attorney, San Francisco, California; for Amicus Curiae City and County of San Francisco.

Stephen W. Manning, Innovation Law Lab, Portland, Oregon; Kari Hong, Boston College Law School, Newton, Massachusetts; for Amici Curiae Oregon Interfaith Movement for Immigrant Justice, Causa Immigrant Rights Coalition of Oregon, Catholic Charities of Oregon, and Immigration Counseling Services of Oregon.

Emily T. Kuwahara, Crowell & Moring LLP, Los Angeles, California; Harry P. Cohen and Gary A. Stahl, Crowell & Moring LLP, New York, New York; Noor Taj, Crowell & Moring LLP, Washington, D.C.; Niyati Shah, John C. Yang, Asian Americans Advancing Justice | AAJC, Washington, D.C.; for Amicus Curiae Asian Americans Advancing Justice | AAJC.

## OPINION

TASHIMA, Circuit Judge:

## INTRODUCTION

This case is back before us on remand from the Supreme Court. *See United States v. Sineneng-Smith*, 140 S. Ct. 1575 (2020). Evelyn Sineneng-Smith appeals her convictions on two counts of encouraging and inducing an alien to remain in the United States for the purposes of financial gain, in violation of 8 U.S.C. §§ 1324(a)(1)(A)(iv) and 1324(a)(1)(B)(i).[1] She contends that the district court erred by denying her motion to dismiss these charges, and that the evidence at trial was insufficient to establish her guilt beyond a reasonable doubt. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## FACTS AND PROCEDURAL HISTORY

### I.  Factual Background

Sineneng-Smith operated an immigration consulting firm in San Jose, California. As part of her work, Sineneng-Smith counseled foreign nationals, mostly natives of the Philippines who were employed without authorization in the home health care industry in the United States, on applying for and

---

[1]    Sineneng-Smith was also convicted of filing false tax returns, in violation of 26 U.S.C. § 7206(1), and mail fraud, in violation of 18 U.S.C. § 1341. Sineneng-Smith did not appeal the tax fraud convictions, and we affirmed the mail fraud convictions in a memorandum disposition, *United States v. Sineneng-Smith*, 744 F. App'x 498 (9th Cir. 2018). The tax and mail fraud convictions were not affected by the Supreme Court's mandate.

obtaining employment-based visas, including permanent resident employment-based visas ("green cards").

## A.  The § 245i Labor Certification Program

Prior to December 21, 2000, Section 245i of the Immigration and Naturalization Act, 8 U.S.C. § 1255(i), permitted certain aliens who had entered the country illegally, accepted unauthorized work, or overstayed their tourist visas, to seek an employment-based adjustment of their immigration status and obtain green cards through the "§ 245i Labor Certification" process. *See* 8 C.F.R. § 245.10. Obtaining a green card through this process involved three sequential steps: (1) obtaining labor certification approval from the United States Department of Labor ("DOL"); (2) obtaining alien worker approval ("I-140 approval") from the United States Customs and Immigration Service ("CIS"); and (3) applying for legal permanent residence. Aliens seeking to obtain permanent residence via § 245i Labor Certification were not entitled to work in the United States until the end of the process when they received their green card.

The § 245i Labor Certification process expired on April 30, 2001, and aliens who arrived in the United States after December 21, 2000, were not eligible to receive permanent residence through the program. *See Esquivel-Garcia v. Holder*, 593 F.3d 1025, 1029 n.1 (9th Cir. 2010). But ineligible aliens could nevertheless continue to apply for labor certification at step one and I-140 approval at step two. Completing these two steps would give the alien a priority date and a place in line if Congress ever changed the law and reopened eligibility for adjusted legal status at step three. However, without further congressional action, an alien who

completed steps one and two would be standing in line for a closed door.

Sineneng-Smith knew that the § 245i Labor Certification program had expired. Nevertheless, between 2001 and 2008, she continued to sign retainer agreements and inform clients whom she knew to be ineligible under § 245i that they could obtain green cards via Labor Certification.

## B.  Guillermo and Esteban

Amelia Guillermo and Hermansita Esteban are natives of the Philippines. They entered the United States separately on tourist visas in November 2001 and April 2002, respectively, and were thereafter offered employment as caregivers. In April 2002, Sineneng-Smith met with Guillermo and had her sign an agreement to retain Sineneng-Smith's services "for purposes of [Sineneng-Smith] assisting [Guillermo] (alien), to obtain permanent residence through Labor Certification." In May 2002, Esteban also signed a functionally identical retainer agreement. Neither Sineneng-Smith nor her employees, however, explained the § 245i Labor Certification process to Guillermo or Esteban, or informed either that, because she entered the United States after December 21, 2000, she was ineligible for lawful permanent residence through Labor Certification. On the contrary, Esteban was told that Sineneng-Smith's office was trustworthy and had worked with many people whose petitions, which Esteban understood to mean applications for green cards, had been approved.  Both aliens began working after retaining Sineneng-Smith, and Esteban did not extend her then-unexpired tourist visa, because she thought that a petition had been filed to legalize her status.

After the initial meetings in 2002, and until 2008, Sineneng-Smith periodically sent Guillermo and Esteban copies of "leniency letters" addressed to state and federal agencies, which requested that the agencies allow each alien "to remain in the United States at least during the process of the application for Labor Certification" because "[t]his alien is taking steps to legalize his/her immigration status in the United States." Sineneng-Smith also periodically sent "status letters" to each alien, which advised her to "[p]lease be patient and cooperate with us so that we will be successful in obtaining your permanent residency in the United States. The State and Federal Governments will reward your patience later."

DOL approved Guillermo's and Esteban's labor certification petitions on May 5, 2007, and June 18, 2007, respectively. On those same dates, Sineneng-Smith mailed second retainer agreements to each alien, providing for an additional fee for assistance in obtaining I-140 approval from CIS. Along with the new retainer agreements, Sineneng-Smith included a "premium processing" chart that showed a path from the step one labor certification, to the step two I-140 petition, to a step three "work permit" and "green card." The chart stated "[i]f no 245i [w]ait 5 or more years until Congress passes a new law," but Guillermo and Esteban both testified at trial that they did not know what "245i" meant. Esteban also received another chart that described "the road to obtaining permanent residence," and contained more references to § 245i, which Esteban also did not understand.

Guillermo testified that if she had been told that she could not obtain a green card through the § 245i Labor Certification process, she would have returned to the Philippines, but she stayed because Sineneng-Smith and her associates told her

that she could work.  Esteban similarly testified that she would not have stayed in the United States if she had known she could not get a green card.

## II.  Procedural History

On July 14, 2010, a grand jury returned a superseding indictment charging Sineneng-Smith with, as relevant to this appeal, three counts of violating 8 U.S.C. § 1324(a)(1)(A)(iv) ("Subsection (A)(iv)") and § 1324(a)(1)(B)(i) ("Subsection (B)(i)").  Subsection (A)(iv) prohibits "encourag[ing] or induc[ing] an alien to come to, enter, or reside in the United States, knowing or in reckless disregard of the fact that such coming to, entry, or residence is in violation of the law."  Subsection (B)(i) imposes additional penalties if "the offense was done for the purpose of commercial advantage or private financial gain."  The indictment charged, as to each § 1324 count, that the violation occurred on the dates that Guillermo, Esteban, and another alien (Oliver Galupo) executed the retainer agreement for Sineneng-Smith to file an I-140 petition at step two of the § 245i process.

Before trial, the district court denied Sineneng-Smith's motion to dismiss the immigration counts, rejecting her arguments that:  (1) her conduct as charged was not within the scope of Subsection (A)(iv); (2) Subsection (A)(iv) is impermissibly vague under the Fifth Amendment; and (3) Subsection (A)(iv), as applied to Sineneng-Smith's activities, violates the First Amendment because it is a content-based restriction on her speech.

After a twelve-day trial, the jury found Sineneng-Smith guilty on all three counts of violating Subsections (A)(iv) and (B)(i).  Sineneng-Smith then moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29(c), renewing the arguments from her motion to dismiss and further contending that the evidence adduced at trial did not support the verdicts.  The district court concluded that sufficient evidence supported the convictions for the two § 1324 counts relating to Guillermo and Esteban, but that sufficient evidence did not support the conviction for the § 1324 count relating to Galupo.

Sineneng-Smith timely appealed, again arguing that the immigration charges should have been dismissed for the reasons asserted in her motion to dismiss, and that the evidence did not support the convictions.  We then reversed Sineneng-Smith's immigration convictions, holding that Subsection (A)(iv) was unconstitutionally overbroad in violation of the First Amendment.  *See United States v. Sineneng-Smith*, 910 F.3d 461 (9th Cir. 2018).

The Supreme Court granted the government's petition for certiorari, *United States v. Sineneng-Smith*, 140 S. Ct. 36 (2019) (mem.), and vacated and remanded "the case for reconsideration shorn of the overbreadth inquiry." *Sineneng-Smith*, 140 S. Ct. at 1582.  We now affirm Sineneng-Smith's convictions for encouraging or inducing an alien to illegally reside in the United States, in violation of § 1324(a)(1)(A)(iv) and § 1324(a)(1)(B)(I)

# ANALYSIS

## I. The Denial of Sineneng-Smith's Motion to Dismiss the Charges under Subsection (iv)

### A. Standard of Review

We review de novo the district court's denial of a motion to dismiss the indictment. *United States v. Tomsha-Miguel*, 766 F.3d 1041, 1048 (9th Cir. 2014). The district court's construction of a statute is reviewed de novo. *United States v. Frega*, 179 F.3d 793, 802 n.6 (9th Cir. 1999).

### B. The Scope of § 1324(a)(1)(A)(iv)

Sineneng-Smith first argues that the district court erred by denying her motion to dismiss the indictment because the conduct charged is beyond the scope of Subsection (A)(iv). She contends that her conduct was not unlawful under the statute because it did not involve fraud, false documents, or bribery, and because the aliens could obtain a legitimate benefit from engaging in the § 245i Labor Certification process, even if they were not ultimately eligible for permanent residence. We are unpersuaded on all counts.

As an initial matter, Sineneng-Smith's arguments are all premised on a fundamental mischaracterization of the charges in the superseding indictment. She alleges that she was prosecuted solely for being hired to file putatively lawful I-140 petitions on behalf of Guillermo and Esteban's employers. However, as the district court correctly noted, Sineneng-Smith was actually prosecuted for entering into retainer agreements with aliens, knowingly misrepresenting to them that her efforts through the § 245i Labor Certification

process would, for a price, enable them to become legal permanent residents, and misleading them about their ability to work lawfully in the United States while they waited for the process to be completed. We agree with the district court that the charged conduct is forbidden by Subsection (A)(iv).

Subsection (A)(iv) proscribes "encourag[ing] or induc[ing] an alien to . . . reside in the United States, knowing or in reckless disregard of the fact that such . . . residence is or will be in violation of law." We have previously defined "encourage" as "to inspire with courage, spirit, or hope . . . to spur on . . . to give help or patronage to," *United States v. Thum*, 749 F.3d 1143, 1148 (9th Cir. 2014) (*quoting United States v. He*, 245 F.3d 954, 960 (7th Cir. 2001)), and have indicated that a defendant's encouragement or inducing must be knowing, *see United States v. Yoshida*, 303 F.3d 1145, 1149–51 (9th Cir. 2002). Nothing in the statutory language or our case law supports Sineneng-Smith's argument that encouragement or inducing is unlawful under Subsection (A)(iv) only if it is accomplished by unlawful means, entails fraud against the government or the use of false documents, or bribery, or provides no legitimate benefit to an alien.

Sineneng-Smith points to several out-of-circuit decisions—notably *United States v. Ndiaye*, 434 F.3d 1270, 1298 (11th Cir. 2006) (defendant encouraged alien by improperly supplying a Social Security number) and *United States v. Oloyede*, 982 F.2d 133, 135–37 (4th Cir. 1993) (per curiam) (defendant encouraged aliens by providing false documents for citizenship applications)—to support her contention that there is a fraud or false documents limitation to Subsection (A)(iv). Her efforts are unavailing. Although *Ndiaye* and *Oloyede* involved defendants who used false documents or provided illegitimate benefits to aliens, neither

case limited the scope of Subsection (A)(iv) to such factual scenarios. *See, e.g.*, *Oloyede*, 982 F.2d at 137 ("'encouraging' relates to actions taken to convince the illegal alien to … to stay in this country"). We previously analyzed both cases when construing the meaning of "encourage" under Subsection (A)(iv), and noted merely that the opinions "demonstrate[ that] a defendant encourages an illegal alien to reside in the United States when the defendant takes *some action* to convince the illegal alien to stay in this country, or to facilitate the alien's ability to live in this country indefinitely." *Thum*, 749 F.3d at 1148 (internal citations, quotation marks, and alterations omitted) (emphasis added). Moreover, we can discern no principled reason for reading a fraud or false document limitation into the statute.

As to importing a false documents limitation into Subsection (A)(iv), we note that the 1985 Senate Judiciary Committee Report on the Immigration Reform and Control Act indicates that the purpose of a related statute, 18 U.S.C. § 1546, is to "enable[] the prosecution of procurers and purveyors of false, altered, or fraudulently obtained documents and the aliens who use such documents to remain in the United States in violation of the law". S. Rep. No. 99-132, at 31 (1985). Reading a false documents element into Subsection (A)(iv) would therefore render § 1546 superfluous. *See Yates v. United States*, 135 S. Ct. 1074, 1086 (2015) ([C]ourts are to "resist[] a reading of [a statute] that would render superfluous an entire provision passed in proximity as part of the same Act.").

Sineneng-Smith's suggestion that only fraud against the government may be prosecuted under Subsection (A)(iv) fares no better. Again, there is nothing in the statute suggesting such a limitation. We therefore reject Sineneng-

Smith's argument that the scope of Subsection (A)(iv) is limited to conduct involving fraud, false documents, or fraud against the government.

Finally, we reject the argument that the charged conduct was outside the scope of Subsection (A)(iv) because Sineneng-Smith lawfully provided Guillermo and Esteban with a legitimate benefit—namely, a place in line if Congress changed the law and expanded eligibility for adjustment of status—by pursuing the § 245i Labor Certification process on their behalf. Neither the language of Subsection (A)(iv) nor our previous constructions of the statute requires that a defendant's encouragement be accomplished by means of an illegitimate process or involve only illegitimate benefits. *See Thum*, 749 F.3d at 1148. Furthermore, the gravamen of the encouragement offense was that Sineneng-Smith encouraged Guillermo and Esteban to stay in the United States in violation of the law by misleading them about the full extent of the benefits they might realistically expect from engaging in the § 245i Labor Certification process. The fact that engaging in the underlying § 245i process may have yielded some legitimate benefit to Guillermo and Esteban does not detract from Sineneng-Smith's culpability under Subsection (A)(iv).

## C.  Lack of Fair Notice

Sineneng-Smith also contends that she lacked fair notice that her conduct violated the law because the instant case involved a novel construction of the statute and no prior case law supported the statutory construction underlying the government's prosecution. We disagree. "[D]ue process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior

judicial decision has fairly disclosed to be within its scope." *United States v. Lanier*, 520 U.S. 259, 266 (1997). "[T]he touchstone is whether the statute, *either standing alone* or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal." *Id.* at 267 (emphasis added). Although previously reported Subsection (A)(iv) cases involved distinguishable fact patterns, Sineneng-Smith's prosecution did not violate due process because, as noted above, the conduct charged fell with the plain meaning of the statute standing alone, including the meaning of "encourag[ed]" as construed in *Thum*, 749 F.3d at 1148. *See Lanier*, 520 U.S. at 267.

Also unavailing is Sineneng-Smith's contention that her reasonable reliance on DOL and CIS's issuance of numerous labor certification and I-140 approvals for her clients deprived her of fair notice that her conduct was criminal under Subsection (A)(iv). This argument relies on the same mischaracterization of the charges that we have previously rejected. Because the charged conduct— knowingly misleading aliens into believing that the approved petitions could lead to permanent residence and thereby encouraging them to remain illegally in the country—was clearly covered under Subsection (A)(iv), the fact that DOL and CIS approved the labor certification and I-140 petitions did not deprive Sineneng-Smith of fair notice that her representations to Guillermo and Esteban constituted unlawful encouragement.

## D. Vagueness

We also find unavailing Sineneng-Smith's contention that interpreting Subsection (A)(iv) to prohibit the conduct charged in the indictment renders the statute impermissibly

vague as applied to her.**²**  "In an as-applied challenge, a statute is unconstitutionally vague if it fails to put a defendant on notice that his conduct was criminal." *United States v. Harris*, 705 F.3d 929, 932 (9th Cir. 2013) (cleaned up). Misleading an alien with false hope about her ability to obtain a green card falls within the plain meaning of Subsection (A)(iv)'s proscription against encouraging an illegal alien to remain in the United States in violation of the law, and an ordinary person would have understood that such conduct is prohibited by the statute.  As such, the Subsection (A)(iv) charges against Sineneng-Smith were not impermissibly vague, and the district court did not err by refusing to dismiss them.

**E.  First Amendment Free Speech and Petition Clause Protections**

Sineneng-Smith next contends that the immigration charges in the indictment should have been dismissed because the conduct charged therein was protected by the Free Speech and Petition Clauses of the First Amendment.  These arguments, which rely yet again on the faulty premise that she was prosecuted for being hired to file I-140 petitions, lack merit.  Sineneng-Smith was prosecuted for a course of conduct that involved misrepresentations made to convince Guillermo and Esteban to retain her services as an immigration consultant.  To the extent that Sineneng-Smith was specifically prosecuted for her speech, First Amendment protections generally do not extend to "false claims that are made to effect a fraud or secure moneys or other valuable considerations." *United States v. Alvarez*, 567 U.S. 709, 723

---

**²** Sineneng-Smith's briefing raised only the question of whether Subsection (A)(iv) was vague as applied to her conduct.

(2012). Furthermore, these representations to Guillermo and Esteban did not fall under the protections of the Petition Clause because "the right to petition is generally concerned with expression directed to the government seeking redress of a grievance," *Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 388 (2011), not with expression directed to a private individual regarding a government petition.

Because Sineneng-Smith's own conduct, as charged in the indictment, was not protected by the First Amendment,[3] we conclude that the district court did not err by denying Sineneng-Smith's motion to dismiss the charges on First Amendment grounds.

## II. The Sufficiency of the Evidence as to Encouragement or Inducing under Subsection (iv).

Sineneng-Smith also contends that the evidence was insufficient to establish beyond a reasonable doubt that, on the dates charged in the indictment, she encouraged or induced Guillermo or Esteban to remain in the United States.

### A. Standard of Review

We review the denial of a motion for acquittal based on insufficiency of the evidence de novo. *See United States v. Suarez*, 682 F.3d 1214, 1218 (9th Cir. 2012). We determine whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could

---

[3] We express no opinion about whether Subsection (A)(iv) is facially overbroad in violation of the First Amendment. *See Sineneng-Smith*, 140 S. Ct. at 1582 ("we vacate the Ninth Circuit's judgment and remand the case for reconsideration shorn of the overbreadth inquiry").

have found the essential elements of the crime beyond a reasonable doubt." *United States v. Nevils*, 598 F.3d 1158, 1163–64 (9th Cir. 2010) (*quoting Jackson v. Virginia*, 443 U.S. 307, 319 (1979)) (emphasis in original).

## B.  Elements of the Offense

To sustain the Subsection (A)(iv) charges, the government was required to prove that Sineneng-Smith knowingly (1) "encourage[d] or induce[d]," (2) "an alien to come to, enter, or reside in the United States," (3) "knowing or in reckless disregard of the fact that such coming to, entry, or residence is or will be in violation of law."  To prove a violation of Subsection (B)(i), the government also needed to show that "the offense was done for the purpose of commercial advantage or private financial gain."  8 U.S. C. § 1324(a)(1)(B)(i).

Sineneng-Smith challenges the sufficiency of the evidence only as to the first element, claiming that the evidence was legally insufficient to establish that she encouraged Guillermo or Esteban to reside in the United States on the dates charged, respectively, in Counts 2 and 3 of the indictment.  We disagree.

## C.  Evidence at Trial

The evidence at trial showed that, in 2002, Sineneng-Smith entered into retainer agreements with Guillermo and Esteban, which stated that the purpose of hiring Sineneng-Smith was "to obtain permanent residence through Labor Certification."  The evidence also established that, from 2002 through 2008, Sineneng-Smith periodically sent copies of "leniency letters" to Guillermo and Esteban that requested

leniency from state and federal agencies in allowing each alien "to remain in the United States at least during the process of the application for Labor Certification," because she was "taking steps to legalize []her immigration status in the United States." The government also introduced evidence showing that, during the same time frame of 2002–2008, Sineneng-Smith also periodically sent Guillermo and Esteban "status" letters that requested them to "be patient and cooperate with us so that we will be successful in obtaining permanent residency." Additionally, the government established, as charged in the indictment, that on May 5, 2007, and June 18, 2007, Guillermo and Esteban, respectively, signed retainer agreements for Sineneng-Smith's assistance in obtaining I-140 approvals; these retainer agreements were accompanied by documents that referenced receiving a "work permit" and "green card" and purported to show Guillermo and Esteban "the road to obtaining permanent residence" through the Labor Certification program.

Sineneng-Smith provided the jury with evidence that completing steps one and two of the § 245i Labor Certification process could have benefited Guillermo and Esteban because they could receive a place in line if Congress changed the law to give them eligibility for permanent residence through the § 245i Labor Certification program. However, both Guillermo and Esteban testified at trial that they did not understand the intricacies of § 245i eligibility, no one informed them that they were ineligible for green cards under § 245i, and they would not have remained in the United States had Sineneng-Smith not given them the impression that they were eligible to obtain permanent residence through the Labor Certification process.

### D.  Analysis

The evidence as a whole showed that Sineneng-Smith had ongoing professional relationships with both Guillermo and Esteban, and that at numerous  times during those relationships—including, specifically, on the dates charged in the indictment—Sineneng-Smith took some action to provide these individuals with the false hope that their retention of her services for each step in the § 245i Labor Certification process could lead to permanent residency.  Viewing the evidence in the light most favorable to the prosecution, we conclude that a rational trier of fact could have found beyond a reasonable doubt that Sineneng-Smith encouraged Guillermo and Esteban to remain in the United States in violation of Subsection (A)(iv).

When she provided them with the retainer agreements, she bolstered their false hope that using her services to file I-140 petitions would be another step on the road to obtaining permanent residency.

### CONCLUSION

For all of the foregoing reasons, the judgment of the district court as to Sineneng-Smith's convictions under 8 U.S.C. §§ 1324(a)(1)(A)(iv) and 1324(a)(1)(B)(i) is **AFFIRMED.**