**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

WILLIAM GREEN,
*Defendant-Appellant.*

No. 20-50257

D.C. No.
3:11-cr-00938-LAB-1

OPINION

Appeal from the United States District Court
for the Southern District of California
Hon. Larry A. Burns, Presiding

Submitted August 5, 2021[*]
Pasadena, California

Filed September 8, 2021

Before: Richard A. Paez, Consuelo M. Callahan, and
Andrew D. Hurwitz, Circuit Judges.

Opinion by Judge Callahan;
Partial Concurrence and Partial Dissent by Judge Paez

---

[*] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

## SUMMARY[**]

### Criminal Law

The panel affirmed a criminal judgment in a case in which the district court imposed a condition of supervised release that the defendant may not "patronize any place" where sexually explicit "materials or entertainment are the primary material or entertainment available."

The panel held that the condition bars the defendant from visiting a free pornography website. The panel wrote that interpreting the condition's language to require that an individual directly purchase goods or services from a physical location ignores the common understanding of these terms as they are used in today's digital age, particularly in light of the oral instructions given by the district court. The panel rejected the defendant's argument that there was insufficient evidence that he viewed pornographic videos on the visited websites.

Alternatively, the panel held that the record supports the conclusion that the defendant searched for and viewed materials depicting sexually explicit conduct, which constituted an independent violation of the special condition at issue.

The panel rejected remaining arguments in a contemporaneously filed memorandum disposition.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Judge Paez concurred in part and dissented in part. He wrote that the majority properly concluded that the record supports the revocation of supervised release on the ground that the defendant viewed an explicit video on the website in question. He wrote that in addition to being superfluous, the majority's expansive interpretation of the supervised release condition—that the defendant "patronized" a "place" merely by clicking on a website—is erroneous.

## COUNSEL

Kenneth M. Miller, Law Office of Kenneth M. Miller, Capistrano Beach, California, for Defendant-Appellant.

Randy S. Grossman, Acting United States Attorney; Daniel E. Zipp, Chief, Appellate Section, Criminal Division; David Chu, Assistant United States Attorney; United States Attorney's Office, San Diego, California; for Plaintiff-Appellee.

**OPINION**

CALLAHAN, Circuit Judge:

At issue is whether a condition of supervised release that appellant William Green may not "patronize any place" where sexually explicit "materials or entertainment are the primary material or entertainment available" barred him from visiting a free pornography website. We hold that it does. Interpreting this language, as Green argues, to require that an individual directly purchase goods or services from a physical location, ignores the common understanding of these terms as they are used in today's digital age, particularly in light of the oral instructions given by the district court to Green here. We thus determine that the district court did not abuse its discretion in revoking Green's term of supervised release.[1]

I

In 2013, Green pleaded guilty to possession of images of minors engaged in sexually explicit conduct in violation of 18 U.S.C. § 2252(a)(4)(B), and was sentenced to 87 months' imprisonment and ten years of supervised release. One of the conditions of supervised release was that Green may

> [n]ot possess or view any materials such as videos, magazines, photographs, computer images, or other matter that depicts "sexually explicit conduct" involving children as defined by 18 U.S.C. § 2256(2) and/or

---

[1] In a separate memorandum disposition filed contemporaneously with this opinion, we reject Green's remaining arguments and affirm the district court's imposition of a sentence of 18 months' imprisonment followed by ten years of supervised release.

"actual sexually explicit conduct" involving adults as defined by 18 U.S.C. § 2257(h)(1), and not patronize any place where such materials or entertainment are the primary material or entertainment available.

Green served his term of imprisonment and was released in 2017. In March 2020, Green used his monitored cell phone to visit a website where sexually explicit conduct involving adults was the primary material available.[2] The district court found that Green violated the terms of his supervised release by "patroniz[ing] a place" where sexually explicit materials were the primary entertainment available. The court sentenced Green to 18 months' imprisonment followed by ten years of supervised release. Green timely appealed.

II

"We review a district court's revocation of a term of supervised release for an abuse of discretion." *United States v. Thum*, 749 F.3d 1143, 1145 (9th Cir. 2014). "In evaluating the sufficiency of the evidence supporting a supervised release revocation, 'we ask whether, viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the essential elements of a violation by a preponderance of the evidence.'" *Id.* at 1145–46 (quoting *United States v. King*, 608 F.3d 1122, 1129 (9th Cir. 2010)).

---

[2] Probation alleged Green violated the terms of his supervised release numerous times starting as early as August 2017. However, the government sought revocation based on only the March 2020 violation, and we therefore only address this violation.

Green contends that he did not violate the terms of his supervised release because he did not purchase any explicit material from the pornographic website he visited and therefore he did not "patronize" the website.  Green also contends that he did not visit a "place" because a website is not a "place."

We are not persuaded.  In determining the meaning of terms used in supervised release conditions, "we may consult the definitions of those terms in popular dictionaries." *United States v. Gibson*, 998 F.3d 415, 419 n.5 (9th Cir. 2021) (quoting *Metro One Telecomms., Inc. v. Comm'r*, 704 F.3d 1057, 1061 (9th Cir. 2012)).  "Patronize" has been broadly defined to mean "[t]o . . . support (a shop, restaurant, theatre, etc.) with one's custom; to frequent, esp[ecially] as a customer or visitor[.]"  Oxford English Dictionary Online.[3]  Other sources have defined the word to mean to "provide aid or support."  Merriam-Webster's Collegiate Dictionary, 909 (11th ed. 2003); *see also* Black's Law Dictionary (11th ed. 2019) (defining "patron" in part as both "a customer or client of a business, esp[ecially] a regular one" and as "[s]omeone who protects, supports, or champions some person or thing, such as an institution, social function, or cause"); *cf. United States v. Caraher*, 973 F.3d 57, 64 (2nd Cir. 2020) (referring to users of child-pornography websites as "patrons" of those sites); *United States v. Tagg*, 886 F.3d 579, 584 (6th Cir. 2018) (same); *United States v. Brune*, 767 F.3d 1009, 1024 (10th Cir. 2014) (referring to users of the internet as "Internet patrons"). Consistent with this expansive definition, we have previously stated that the term "patronize" encompasses a wide range of "everyday activities like shopping, seeing a

---

[3] https://www.oed.com/view/Entry/138942?redirectedFrom=patron ize#eid (last visited July 12, 2021).

mainstream movie, reading a mainstream magazine, or watching television." *United States v. Gnirke*, 775 F.3d 1155, 1163 (9th Cir. 2015). As these examples make clear, an individual can thus "patronize" a business merely by visiting it, or in the case of media, by viewing or consuming it. *See id.* Here, Green patronized the pornographic website simply by visiting it.

Green's argument that a website is not a "place" fares no better. "Place" includes not only a physical location, but also "an indefinite region or expanse." Merriam-Webster's Collegiate Dictionary, 946 (11th ed. 2003). A website qualifies as an indefinite region or expanse located in the digital realm. Consistent with this understanding, a "website" has been defined as "a *place* on the internet where information is available about a particular subject, organization, etc." Macmillan Dictionary Online (emphasis added).[4] Therefore, a "place" does not necessitate the presence of a physical environment; a virtual website can also be a "place" as that term is commonly used and understood. Visiting a website primarily featuring pornography thus constitutes "patronizing a place" under a contemporary and common sense understanding of those terms.

This interpretation is further buttressed by the district court's oral statements at the January 2018 hearing at which the condition was imposed. There, the district court stated, "You're not to view any form of media, which includes digital or print media, that depicts sexually explicit conduct." The court did not specify that Green was forbidden only from purchasing such materials at a traditional storefront. In

---

[4] https://www.macmillandictionary.com/us/dictionary/american/website (last visited July 12, 2020).

fact, the court explicitly explained that "[w]hether it's on a handheld cell phone or a media device or looking at the internet or going to the library or anything else, you're not to view those things, not to try to access sites that have that type of material on them as the predominant offering." The court then asked Green whether he understood, to which Green responded, "Yes, sir." Additionally, these conditions made sense in the context of Green's underlying conviction for "possession of images of minors engaged in sexually explicit conduct" in violation of 18 U.S.C. § 2252(a)(4)(B) and which involved Green's use of the internet. Therefore, our interpretation of the condition is consistent with the district court's oral instructions and Green's own understanding that the condition barred Green from accessing pornographic websites.[5]

Green also argues that the district court clearly erred in finding that he patronized the pornographic websites because there was insufficient evidence that he viewed pornographic videos on those sites. Specifically, while the computer monitoring system reported that Green clicked on various pornographic videos, the monitoring software reported that each video remained on the screen for a duration of 0:00. This argument fails for two reasons. First, even if Green did not actually watch the videos, just visiting the pornography website in the first place violated the terms of his supervised release for the reasons set forth above. Second, probation's monitoring software reported that the user viewed the webpages containing the videos using incognito mode, "a mode that can be set while web browsing that allows for private browsing," and which inhibited the

---

[5] While the written condition might have been clearer had it explicitly referenced websites, we nevertheless conclude that a website is a "place" under the meaning of that term.

monitoring system from collecting certain data on Green's activities.  Upon reviewing the evidence in the light most favorable to the government, the district court did not clearly error in drawing the inference that Green watched the videos notwithstanding the 0:00 viewing duration reported by the monitoring software.

### III

The condition of supervised release that the district court determined Green violated also separately prohibited him from "possess[ing] or view[ing] any materials such as videos, magazines, photographs, computer images, or other matter that depicts 'sexually explicit conduct' involving children as defined by 18 U.S.C. § 2256(2) and/or 'actual sexually explicit conduct' involving adults as defined by 18 U.S.C. § 2257(h)(1) . . . ."  While the parties do not focus their arguments on this provision, we find that the record also supports the revocation of Green's supervised release on the ground that Green ran afoul of this restriction when he viewed content on the pornographic website as discussed above.

### IV

We agree with the district court that Green's supervised release condition barring him from "patroniz[ing] any place" where sexually explicit materials are available is properly read to have prohibited him from visiting a pornographic website.  Alternatively, the record clearly supports the conclusion that Green searched for and viewed materials depicting sexually explicit conduct, which constituted an independent violation of the special condition at issue.  The district court therefore did not abuse its discretion in

determining that Green violated his release conditions.  The judgment of the district court is **AFFIRMED**.

---

PAEZ, Circuit Judge, concurring in part and dissenting in part:

Clicking on a website does not, on its own, entail "patronizing a place."  The majority's interpretation of William Green's supervised release condition is both unnecessary and overbroad.  I respectfully dissent from parts II and IV of the majority opinion.

## I.

Part II of the majority opinion is superfluous.  Green's conditions of supervised release prohibited (1) "view[ing] any materials such as videos, . . . computer images[,] or other matter that depicts 'sexually explicit conduct,'" and (2) "patroniz[ing] any place" where such material is "the primary material or entertainment available."  As the majority properly concludes, the record supports the revocation of Green's supervised release on the ground that a "rational trier of fact could have found . . . by a preponderance of the evidence" that Green viewed an explicit video or image on the website in question. *United States v. Thum*, 749 F.3d 1143, 1145–46 (9th Cir. 2014) (citation and internal quotation marks omitted); Maj. Op. 9.  No further analysis is required.

II.

A.

In addition to being unnecessary, the majority's expansive interpretation of Green's supervised release condition is also wrong.  Due to the broad discretion a district court is afforded in crafting conditions of supervised release, *see United States v. Gnirke*, 775 F.3d 1155, 1159 (9th Cir. 2015), those conditions must be "sufficiently clear and specific to serve as a guide for the defendant's conduct," 18 U.S.C. § 3583(f).  *Cf. United States v. Johnson*, 626 F.3d 1085, 1090 (9th Cir. 2010) (explaining that a condition violates due process if it "forbids . . . the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application" (citation omitted)).  Here, although the district court could have prohibited Green from "visiting any website" where videos or images depicting sexually explicit conduct are the "primary material or entertainment available," it did not.  We should not re-write Green's conditions of release on the district court's behalf by endorsing illogical and expansive definitions of "patronize" and "place."

B.

The majority's interpretation of "patronize" and "place" is erroneous.  First, the majority errs in concluding that Green "patronize[d]" a website merely by clicking on it.  The majority notes that "patronize" is often defined as providing "aid or support," or to frequent "as a customer or visitor." Maj. Op. 6.  Another dictionary has similarly defined the word as: "to act as a patron of" and to "be a customer or client of."  Webster's Third New International Dictionary 1656 (1961).  A patron is generally defined as one who "uses

money or influence to advance the interests of a person, cause, art, etc.," or a "customer of a shop, restaurant, theatre, etc." *Patron*, Oxford English Dictionary Online, https://www.oed.com/view/Entry/138929?rskey=hSjYKR &result=1&isAdvanced=false#eid (last visited Aug. 27, 2021).

There is no record evidence establishing that Green was a customer or client of a sexually explicit website, nor any suggestion that Green supported or aided the site by clicking on it. Nonetheless, the majority concludes that visiting any website constitutes "patronizing" that site, an expansive interpretation of the word "patronize" that would lead to absurd results in this context.

Simple examples establish the majority's error. Under its reasoning, visiting a website for any purpose would involve patronizing the site. A researcher that visits a contemptible website would be "patronizing" the organization that runs the site. So too would a curious user of social media who clicked on a hyperlink and subsequently accessed the website of an organization he despises. Similar scenarios are legion and illustrate the majority's limitless interpretation of "patronize." The majority's holding is particularly problematic in the criminal context, where defendants such as Green face years or decades in prison based on their alleged online activity.

Furthermore, the majority's definition finds no support in case law. Two cases the majority relies on, *United States v. Caraher*, 973 F.3d 57 (2d Cir. 2020) and *United States v. Tagg*, 886 F.3d 579 (6th Cir. 2018), used the word "patron" to describe individuals who created user accounts on a website and subsequently used those accounts to access the site. *See Caraher*, 973 F.3d at 60; *Tagg*, 886 F.3d at 585. While creating an account and username is akin to creating

a free account at a local library, there is no evidence that Green created or logged into any such account to access the site in question. The third case, *United States v. Brune*, 767 F.3d 1009 (10th Cir. 2014), is even less relevant, as whether Green patronized "the Internet" by using a web browser is not disputed.

Nor does our decision in *Gnirke* provide any support to the majority's argument. The actions described in *Gnirke*— "shopping, seeing a mainstream movie, reading a mainstream magazine, or watching television," 775 F.3d at 1163—all involve an individual purchasing access to a physical good or visual entertainment. Although one may patronize his cable provider by watching television that he previously subscribed to and paid for, the same is not true of someone who merely clicks on a website. To be sure, as with an account at a public library, transfer of payment is not required for one to patronize an institution. But the majority's conclusion that "Green patronized the pornographic website simply by visiting it" contradicts common understandings of the term, ignores the realities of the internet, and is entirely unsupported by case law.

Second, the majority further errs by concluding that Green visited a "place" under the terms of his release merely by clicking on a website. By so holding, the majority implicitly adopts the "cyberspace as place" metaphor that some commentators have criticized. *See, e.g.*, Mark A. Lemley, *Place and Cyberspace*, 91 Cal. L. Rev. 521 (2003).

The majority's determination that a website is "an indefinite region or expanse located in the digital realm," Maj. Op. 7, fails to consider how the internet actually functions. Although people speak or write of visiting websites, they are not traveling to any location or region. Rather, by clicking on a link or website, an individual sends

a request for information to the provider of the website, and the provider, through an automated process, sends back data. Lemley, *Place and Cyberspace*, at 524. "[I]t is precisely this automatic interconnection between data offered by different people in different places that makes the Internet so different from the physical world." *Id.* at 525; *see also id.* at 523–26 ("The content of the Internet consists only of information . . . ."). The Supreme Court has also recognized this reality, explaining that the internet involves "a wide variety of communication and information retrieval methods." *Reno v. ACLU*, 521 U.S. 844, 851 (1997). Thus, "cyberspace" is "located in no particular geographical location but available to anyone, anywhere in the world, with access to the Internet." *Id.* In my view, the majority's conclusion that Green violated the terms of his release can be reached without assuming that a website is equivalent to a physical location.

*     *     *

The internet functions through unique, highly technical processes of information access and connection that are often difficult to comprehend. Nonetheless, we should refrain from analyzing legal issues involving the internet in ways that minimize or disregard those nuances, particularly in the criminal context. *See, e.g.*, *United States v. Bosyk*, 933 F.3d 319, 352 (4th Cir. 2019) (Wynn, J., dissenting) ("The most troubling aspect of the majority opinion . . . is its failure to grapple with the complex and novel questions courts face when assessing probable cause premised on conduct on the internet."); *Packingham v. North Carolina*, 137 S. Ct. 1730, 1736 (2017) ("The forces and directions of the Internet are so new, so protean, and so far reaching that courts must be conscious that what they say today might be obsolete tomorrow."). I respectfully dissent from parts II

and IV of the majority opinion, however I concur in the judgment, as noted above.